**Raymond Visintin, Plaintiff-Appellee, v. Country Mutual Insurance Company, a Corporation, Defendant-Appellant.**

**Gen. No. 66–16.**

Fifth District.

December 9, 1966.

Rehearing denied December 30, 1966.

George B. Gillespie, Gillespie, Burke & Gillespie, of Springfield, for appellant.

Stanford S. Meyer, Meyer & Meyer, of Belleville, for appellee.

GOLDENHERSH, J.

Defendant, Country Mutual Insurance Company, a corporation, appeals from the judgment of the Circuit Court

of St. Clair County, entered in favor of plaintiff, after a nonjury trial.

This action arises out of an automobile collision which occurred on August 10, 1961. Plaintiff was injured while driving an automobile which was struck by an automobile owned by Jane Villegas, and driven by Shirley Kessinger. Plaintiff filed suit in the District Court of the United States for the Southern District of Illinois, naming as defendants, Shirley Kessinger, Jane Villegas, and Pedro Villegas, her husband, and Erwin Shaw. Prior to submission of the case to the jury, plaintiff dismissed as to Shaw, the court directed verdicts in favor of Mr. and Mrs. Villegas, and the jury returned a verdict in favor of plaintiff, and against Shirley Kessinger. The record shows that no service of process was had on Shaw, and apparently neither party knew his place of residence at that time.

The parties have stipulated that on August 10, 1961, there was in force and effect a policy of insurance issued by defendant, covering the automobile involved in the collision in which plaintiff was injured, and naming Jane Villegas as the insured.

Plaintiff's complaint, as amended, alleges the entry of the District Court judgment, the issuance of execution, its return "unsatisfied," the existence of the policy, and defendant's refusal to pay the judgment.

Defendant's answer admits the entry of the judgment, the existence of the policy, the return of the execution, but denies liability on the ground that Shirley Kessinger was not operating the vehicle with the permission of the named insured, or with the permission of any adult member of the named insured's family.

The evidence shows that the named insured, Jane W. Villegas, and her husband, Pedro Villegas, owned and lived on a farm near Eldred. Erwin Shaw was employed by them, and lived in a house on the farm, with his wife and 4 children. Shaw did general farm work, looked

after some of the stock, and took care of the farm machinery. On occasion, he drove one of the farm vehicles to Carrollton to buy repair parts for the farm equipment. He had worked for the Villegases for approximately a year, on an hourly basis, and was considered a good employee.

On August 2, 1961, the Villegases left for a trip to Mexico City. They left the 1961 Chevrolet, which was involved in the accident, on the farm, and both of them, at different times, told Shaw that while they were gone he could drive the 1961 Chevrolet to go to Carrollton to buy parts needed for the repair of the farm machinery, and in going back and forth to Carrollton, he could stop and buy groceries. Prior to that time, Shaw had never driven this automobile. They specifically instructed him at this time not to allow anyone else to drive the car. This was done primarily because the Villegases knew that Shaw had teenage boys, whom they did not want to drive the car, and also because there was no collision insurance.

Prior to leaving for Mexico, the Villegases gave Shaw checks, dated a week apart, to cover his weekly wages. Shaw was instructed to enter the number of hours he worked each day, in a book provided by Pedro. It was agreed that he would be paid for any amounts due him in excess of the amounts of the checks, when the Villegases returned from their trip. At the time of the Villegases' departure, the speedometer of the Chevrolet showed that it had been driven 8,215 miles; when they returned, it had been driven in excess of 10,000 miles, and the speedometer was disconnected.

The Villegases did not know Shirley Kessinger, who was driving the car at the time of the collision on August 10, 1961. They knew nothing of the occurrence on August 10th, until they returned to their farm on September 6, 1961. When they returned to the farm, they found it unattended, and Shaw was gone. The book entries

77

which Shaw was required to keep showed that he had worked from 7:00 a. m. to 3:00 p. m. on August 10, 1961. They checked with the dealers at Carrollton and discovered that no parts had been purchased by Shaw on that date.

Shirley Kessinger testified that she met Shaw in a tavern about 5:00 p. m. on August 10th. Shortly thereafter, she left the tavern with Shaw to look for her older sister, who had been "running around" with Shaw. Shirley drove the automobile to another tavern, and Shaw sat in the front seat. They had a drink at each of the taverns. After leaving the second tavern, they went to a third tavern, near Greenfield. None of the taverns were near, or in the direction of, the Villegas farm. In each instance, Shaw told Miss Kessinger where to go. He told her that the 1961 Chevrolet was his new car, and asked her to drive. They did not find Shirley's sister, and left the tavern at Greenfield to return to Roodhouse, because Shirley wanted to attend a dance which started at 9:00 o'clock. As they started toward Roodhouse, Shaw started making advances. He reached over and pulled up her dress. She asked him to stop, but shortly thereafter, he did the same thing. Each time, she reached down and pushed his hand away. This continued, on and off, for about 10 or 15 minutes. Near the scene of the collision with the Visintin car, Shaw was again attempting to lift up her dress, and in pushing his hand away, she looked down, the car crossed the middle line of the road, and the collision occurred.

Shaw has apparently been charged with forging checks given him by the Villegases, and his whereabouts are unknown.

The definitions of "Insured" in the policy, include the following:

> "(b) any other person using such automobile, provided the actual use thereof is with the permission of the Named Insured, or with the permission

78

of any adult members of the Named Insured's family;"

The coverage extended by this type of omnibus clause has been the subject of much litigation, and numerous cases are gathered and discussed in annotations found at 4 ALR3d 10; 5 ALR2d 600; and 160 ALR 1195.

Illinois has consistently followed what ALR (5 ALR2d 622) terms the "liberal rule," that once permission is granted for the use of a vehicle, even though restrictions on its use are at that time imposed, coverage exists, even though the use may be for a purpose not contemplated by the insured when the permission was given. Fireman's Fund Indemnity Co. v. Freeport Ins. Co., 30 Ill App2d 69, 173 NE2d 543, and cases cited at page 73.

Under the holdings of these cases, there appears to be little question that had Shaw been driving the Villegas automobile at the time of the collision, coverage would have been afforded him under the policy.

Under the holding of Hays v. Country Mutual Ins. Co., 28 Ill2d 601, 192 NE2d 855, had Shaw not been riding in the automobile at the time in question, it appears equally clear that Miss Kessinger would not be covered.

The issue presented, therefore, is whether, in the face of the restrictions imposed upon Shaw's use of the automobile, and in view of his violation of the Villegas' instructions that no one else was to drive the car, and under the facts here presented, Miss Kessinger can be held to have the implied permission of the Villegases to operate the automobile. With the exception of Chicago Motor Club v. Travelers Indemnity Co., 57 Ill App2d 17, 206 NE2d 518, counsel have not cited, nor has this court found, any Illinois cases in which the original permittee was present in the automobile driven by a second permittee. However, in Standard Acc. Ins. Co. v. New Amsterdam Cas. Co., 249 F2d 847, the United States Court of Appeals for the Seventh Circuit, at page 853, stated the Illinois law to be: "We are of the opinion,

therefore, that in Illinois one to whom the named insured has given the initial permission to use an automobile for a specific purpose has implied authority to permit the use of the automobile to another, where in doing so the second permittee uses the car for the same purpose for which the initial permission was given, the original permittee being present in the car with him." In Hays v. Country Mutual Ins. Co. (supra), the Supreme Court, citing the Standard Accident opinion, at page 609, said: "If the original permittee retains control of the car, but turns over its physical operation to a third person while remaining a passenger, an implied permission has been found in the continued use and control of the original permittee."

The status of the second permittee, when accompanied by the original permittee, has been considered by the appellate courts of other jurisdictions. In Mullin v. Fidelity & Casualty Co. of New York, 271 Minn 551, 136 NW2d 613, (Supreme Court of Minnesota, 1965) the owner of an automobile permitted its employee, McCrea, to use it in his work, but with specific instructions that he was not to permit anyone else to drive it. McCrea, because of some eye discomfort, permitted Mullin to drive the car, while he remained as a passenger, sitting in the front seat. In affirming the trial court's holding that Mullin was an "insured" under the owner's policy, the court, at page 616, said: "It is reasonable to assume that the restrictive instruction was given because Pillsbury wished that the use of the car be limited to those situations where McCrea was present in the vehicle and able, by reason of being there, to direct the manner of its operation. At the time this accident occurred, McCrea actually was using it in the sense that he was present in the car, and, except for the minute details of its operation, was able to control the purpose of the trip and the route to be followed."

80

In Indemnity Ins. Company of North America v. Metropolitan Cas. Ins. Co. of New York, 33 NJ 507, 166 A2d 355 (Supreme Court of New Jersey, 1960), an automobile owned by a Mrs. Calandriello, one of two shareholders in a liquor distributing firm, permitted a salesman to use her automobile to take some customers of the firm on a tour of a brewery in Philadelphia. Smith, the salesman, when he used the car on prior occasions, had been instructed that only he was to operate it, although on this day no such instructions were given. On the return trip from Philadelphia, one Acerra, with Smith's permission, was driving when the car left the highway and struck a tree. The omnibus clause in the policy there involved was identical to that in this case. In interpreting the clause, the Supreme Court of New Jersey, at page 358, said: "The clause says nothing about *operation* of the vehicle. It is the *use* which must be permitted. Defendant reads the word *use* as synonymous with *operation,* and argues that since Mrs. Calandriello in effect expressly forbade Acerra from *operating* her car, Acerra was not covered. We think that in this context the words *use* and *operation* are not synonymous. The *use* of an automobile denotes its employment for some purpose of the user; the word '*operation*' denotes the manipulation of the car's controls in order to propel it as a vehicle. *Use* is thus broader than *operation.* (Citing cases.) One who operates a car uses it, Cronan v. Travellers Indemnity Co., 126 NJL 56, 18 A2d 13 (E & A 1941), but one can use a car without operating it. An automobile is being used, for example, by one riding in it although another is driving.

"Since in this context the words *operation* and *use* have different meanings and the omnibus clause requires only that the *use* of the automobile be with the permission of the named insured, any prohibition as to the *operation* of the automobile is immaterial to a determination of

81

coverage. Thus, even though a driver has been expressly prohibited from *operating* the car, he is covered if the car was being *used* for a purpose permitted by the named insured. (Citing cases.)"

In Chicago Motor Club v. Travelers Indemnity Co., (supra), in which the Appellate Court for the First District affirmed the judgment of the trial court, based on factual findings favorable to the defendants, the court in discussing the significance of the presence of the alleged first permittee in the automobile at the time of the collision, at page 24, said: "More significant is the fact that he was a passenger in the car at the time Spaeth drove it. This factor itself is an important criterion in determining if there is implied permission in that the use of the car, as distinguished from its operation, remained under the control of the original permittee. Indemnity Ins. Co. v. Metropolitan Cas. Ins. Co. of New York, 33 NJ 507, 166 A2d 355 (1960), 160 ALR 1195, 1213. Further, the mission of Spaeth at the time of the accident seemingly was for the benefit and advantage of the original permittee. According to the weight of authority in this area, these factors would normally be sufficient to justify the conclusion that the Plymouth was being used within the scope of the permission granted by the named insured and would suffice to bring Spaeth within the coverage of the policy as an additional insured." As we interpret the opinion, absent the finding of fact by the trial court, the Appellate Court would have found that Spaeth was covered under the terms of Roy Brainerd's policy. In the case before us, we find the converse situation, here the trial court found that Shirley Kessinger was driving with the implied permission of the named insured.

The Illinois rule is well summarized in Konrad v. Hartford Accident & Indemnity Co., 11 Ill App2d 503, 137 NE2d 855, at page 514: "When the named insured has initially once given permission to another person

to use his motor vehicle but that person deviates from the permission granted, Illinois follows the so-called initial permission rule to the effect that the user need only to have received permission to take the vehicle in the first instance, and any use while it remains in his possession is with 'permission,' under the omnibus clause, though that use may be for a purpose not contemplated by the named insured when he parted with possession of the vehicle; if the original taking by the user is with the named insured's consent, every act of the user subsequent thereto while he is driving the vehicle is with the named insured's permission so far as the omnibus clause is concerned, assuming there is no termination of permission; a deviation from the permission is immaterial; the only essential thing is that permission be given in the first instance; the rule is based on the theory that the insurance contract is as much for the benefit of the public as for the insured, and that it is undesirable to permit litigation as to the details of the permission and use;"

■■ In our opinion, under the rule enunciated in Konrad, the operation of the car by Miss Kessinger while Shaw was present in the car, and while it was being driven at his direction, is a continuation of the use which had its inception in the permission granted by the named insured, and the same rule applicable to the deviation from the place to which he was authorized to drive, and the purpose for which the car could be driven, is applicable to the deviation from the instructions that only he was to drive.

Defendant, in support of its position cites Cocos v. American Automobile Ins. Co., 302 Ill App 442, 24 NE2d 75, and Wolverine Insurance Company v. Eldridge, 326 F2d 748. These cases are clearly distinguishable on the facts. In Cocos, the first permittee was not present in the car at the time of the occurrence and was not engaged in any mission or errand for either the named insured or the first permittee. In Wolverine, the so-called first

permittee did not have the permission of the owner to drive the car, and in fact, his use of the car was expressly forbidden.

Defendant argues that implicit in the holding of Standard Accident Ins. Co. v. New Amsterdam Cas. Co. (supra) is the requirement that the use made of the car while being driven by the second permittee be the use for which the initial permission was given, and points to the fact that the Supreme Court, in Hays v. Country Mutual Ins. Co., cited with approval the holding in Standard Accident. In our opinion, in view of the holding of Konrad that "the only essential thing is that permission be given in the first instance," it is not material that the use being made of the car deviates from the use contemplated when the initial permission was given. That this is the proper interpretation of the applicable rules is further demonstrated in that in Hays (see page 609), there is no requirement that the use be the same.

Defendant contends that Shaw, in using the automobile for his own lecherous purposes, and while so engaged, his molestation of the driver, constitutes abandonment of control of the car, so that its operation was no longer under his direction.

We have examined the cases cited by defendant in support of its argument, and find them clearly distinguishable. In Plunkett v. Nationwide Mut. Ins. Co. (Supreme Court of Errors of Connecticut, 1963), 187 A2d 754 the driver Plunkett, moved a car on a parking lot, at the direction of Fleischner, the parking lot attendant, who was not in the car. The court found that Fleischner was not in a position to exercise the right of control over the vehicle and Plunkett was in complete control.

In Kadrmas v. Mudna (Supreme Court of North Dakota, 1961), 107 NW2d 346 the original permittee had gone to sleep in the car and told one of his companions to wake him when they were ready to leave. He did not give the driver permission to drive. The court, quoting

84

from its earlier opinion in Persellin v. State Automobile Ins. Ass'n, 75 ND 716, 32 NW2d 644, makes it clear that it is the use, and not the driving or operation, that must be expressly, or impliedly, permitted by the named insured.

In Nationwide Mut. Ins. Co. v. State Farm Mutual Ins. Co., 209 F Supp 83, (USDCND W Va 1962) the original permittee was not present in the car, the first permittee, James Canterbury was intoxicated, and as stated by the court, even if there could be a finding of his having granted Coffman, the driver, permission to operate the car, the elements of direction and control were lacking.

Here, Shaw, present in the automobile and directing Miss Kessinger where to drive, clearly retained control, and based upon the authorities cited, we conclude that a deviation from the permitted use, involving lust, alcohol, or both, is governed by the same rule as would be applicable, had Shaw permitted Miss Kessinger to drive the vehicle for the purpose of driving him to church, or for some equally laudable purpose. The controlling factor, as stated in Konrad, is that permission to use the automobile was given in the first instance.

For the reasons herein set forth, the judgment of the Circuit Court of St. Clair County is affirmed.

Judgment affirmed.

EBERSPACHER and MORAN, JJ., concur.