UNITED STATES FIDELITY & GUARANTY COMPANY, a Corporation, Appellant,

v.

The MILLERS MUTUAL FIRE INSURANCE COMPANY OF TEXAS, a Corporation, Appellee.

No. 19046.

United States Court of Appeals
Eighth Circuit.

June 18, 1968.

Doris J. Banta, of Carter, Bull, Baer, Presberg & Lee, St. Louis, Mo., for appellant; George E. Lee, on the brief.

James J. Amelung, of Holtkamp & Amelung, St. Louis, Mo., for appellee.

Before BLACKMUN, GIBSON and LAY, Circuit Judges.

LAY, Circuit Judge.

Two automobile insurance companies again do battle over the continuing question: "Who has the coverage?" A declaratory action focused attention on who was to pay a judgment against an assured arising out of an automobile accident. In a subsequent third party action a jury found the assured not guilty of any negligence.[1] Nevertheless, United States Fidelity & Guaranty Company (hereinafter called U.S.F.&G.), the loser below in the declaratory action, now appeals, seeking reversal and recovery of expenses of litigation for successfully defending its assured.

The Millers Mutual Fire Insurance Company of Texas (hereinafter called Millers) refused to defend in the personal injury suit the driver of its assured's automobile on the ground that he did not have permission of the named assured to drive at the time of the accident in question. U.S.F.&G. reluctantly assumed the defense of the driver, under his father's automobile policy, covering risks for non-owned automobiles. U.S. F.&G. felt Millers was unfairly shirking its responsibility to its assured and brought this declaratory action in state court. At the time the present action was commenced a personal injury suit was pending against the driver, William

---

1. *Although not alleged in the complaint,* the parties agree there is still pending an unfiled claim against the assured for expenses and loss of services, by the injured party's parents, which is allegedly valued by the parents' counsel at $7,500.-00.

Siedhoff, Jr., praying for damages in the sum of $65,000.00. Millers removed the action, alleging diversity of citizenship and the amount in controversy to be over $10,000.00. However, since U.S.F.&G. has successfully defended the assured, Millers now claims that the federal court has lost jurisdiction because of the decrease of the jurisdictional claim (i. e., the disappearance of the potential liability) even though it was Millers original decision to invoke federal jurisdiction by removal.

 Although the declaratory judgment procedure has been recognized as designed to equate rights under insurance contracts, see cases cited in Universal Underwriters Ins. Co. v. Wagner, 367 F.2d 866, 872 (8 Cir. 1966), nevertheless we pointed out there that the Declaratory Judgment Act is not a command to the district court to take jurisdiction, and the exercise of jurisdiction under the Act lies within its sound judicial discretion.[2] See Brillhart v. Excess Ins. Co., 316 U.S. 491, 494, 499, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); 6A Moore, Federal Practice ¶¶ 57.08(2), 57.19 (2d ed. 1967). Other circuits have held that where the question of the assured's liability is yet unresolved, the controversy does not state a claim for relief until the third party matters are adjudicated. See e. g., American F. & C. Co. v. Pennsylvania T. & F. M. C. Ins. Co., 280 F.2d 453 (5 Cir. 1960); cf. Travelers Indemnity Co. v. Standard Accid. Ins. Co., 329 F.2d 329 (7 Cir. 1964); Nationwide Mutual Ins. Co. v. Fidelity & Cas. Co., 286 F.2d 91 (3 Cir. 1961). Judge Gibson pointed out in Farmers Elevator Mutual Ins. Co. v. Carl J. Austad & Sons, Inc., 366 F.2d 555, 557 (8 Cir. 1966), where one company assumes responsibility by processing, defending and paying the claim or judgment, and then proceeds to litigate its legal contentions of

coverage with the other carrier, that this is "a much preferable practice in advancing the administration of justice." In the instant case if the third party claims had been *first* resolved wherein the assured was absolved from liability this action would probably have never involved the federal jurisdictional amount or perhaps even been placed in litigation. However, this did not happen. Defendant overlooks in its present jurisdictional attack the well settled principle that once jurisdiction is successfully invoked, subsequent events are of no importance and cannot divest the court of its jurisdiction. Saint Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Home Ins. Co. of N. Y. v. Trotter, 130 F.2d 800 (8 Cir. 1942); Atlantic Corp. v. United States, 311 F.2d 907 (1 Cir. 1962); Wright, Federal Courts § 93 (1963).

The district court found that the driver of the accident car was not covered by Millers' policy since he did not have the permission of the named assured to drive. The facts briefly stated show that one Emmet J. Gillespie purchased a M.G.B. sports convertible automobile for his son Duff to drive while attending graduate school at Washington University in St. Louis, Missouri. In the summer of 1965 Duff went to Europe and gave the keys to his friend William Siedhoff, Jr., with whom he shared an apartment at school. Dr. Gillespie knew of this fact, but stated that he understood the arrangement limited use of the car to the event that the boys moved from the apartment in Duff's absence, thereby necessitating removal of the car, or for some other "emergency." Although Siedhoff claimed a broader permissive use was granted, the trial court credited only his early statement given to an adjuster that he was to use the car only for emergency purposes.

2. Refusal to entertain such action may be particularly appropriate where coverage is admitted but the companies are disputing who is the "primary" or "excess" carrier. Cf. Universal Underwriters Ins. Co. v. Wagner, supra, 367 F.2d

at 871, n. 7. Of course, where an assured is denied coverage and not afforded a defense, the issue between the carrier and the assured is "ripe" for controversy. Cf. United States F. & G. v. Pierson, 97 F.2d 560 (8 Cir. 1938).

On July 5, 1965, Siedhoff was driving the convertible on a date with a Miss Margaret Stemme. During the course of the evening the car was involved in a one car accident badly injuring Miss Stemme. Millers' policy with Gillespie had the standard omnibus declaration of insurance coverage for any operator of their assured's vehicle *who is driving with the permission of the assured.*

The parties both agree that since Gillespie's policy was written in Illinois, the issue of coverage through permissive use is governed by Illinois law. Assuming all of the facts as determined by the district court to be true, we find that under Illinois law the district court erred in holding that there was not permission granted to Siedhoff at the time of the accident.

Illinois follows what has been termed as the "initial permission rule." See Konrad v. Hartford Accid. & Indemnity Co., 11 Ill.App.2d 503, 137 N.E.2d 855 (1956); Visintin v. County Mutual Ins. Corp., 78 Ill.App.2d 75, 222 N.E.2d 550 (1966); State Farm Mutual Auto Ins. Co. v. Mohan, 85 Ill.App.2d 10, 228 N.E.2d 283 (1967); Farmers Automobile Ins. Ass'n v. Iowa Mutual Ins. Co., 77 Ill.App.2d 172, 221 N.E.2d 795 (1966). This "liberal" rule has appropriately been called the "hell or high water" rule. See Annot., 5 A.L.R.2d 600, 622 n. 17.

The district court held that a restriction was placed upon Siedhoff's driving the car which limited his use to an emergency situation which never occurred, and therefore the "initial permission" doctrine did not come into play. However, we feel the Illinois cases make it clear that once *any restricted permission* is given for use of the vehicle in question, this permission extends to *any use* as far as insurance coverage for third parties is concerned. In Konrad v. Hartford Accid. & Indemnity Co., 137 N.E.2d at 861, the Appellate Court of Illinois said:

"* * * Illinois follows the so-called initial permission rule to the effect that the user need only to have received permission to take the vehicle in the first instance, and any use while it remains in his possession is with 'permission', under the omnibus clause, though that use may be for a purpose not contemplated by the named insured when he parted with possession of the vehicle; if the original taking by the user is with the named insured's consent, every act of the user subsequent thereto while he is driving the vehicle is with the named insured's permission so far as the omnibus clause is concerned, assuming there is no termination of permission; a deviation from the permission is immaterial; the only essential thing is that permission be given in the first instance; the rule is based on the theory that the insurance contract is as much for the benefit of the public as for the insured, and that it is undesirable to permit litigation as to the details of the permission and use * * *."

Thus, the permission granted by a named assured to use a vehicle for the sole purpose of going to town for farm machinery repair parts and groceries was deemed sufficient permission to bind insurance coverage for an unauthorized journey at night, with a girl friend at the wheel, to visit several taverns. Visintin v. County Mutual Ins. Corp., supra. And permissive use has been found under Illinois law where a body shop employee picked up a customer's car for repairs and then took it out on a date and had an accident. See State Farm Mutual Auto Ins. Co. v. Mohan, supra. We find no authority under Illinois law for defendant's interpretation and therefore hold that there was coverage under the Millers' policy.

Even though we find coverage under both policies, the issue remains whether U. S. F. & G. may seek indemnity or contribution for the expenses and attorney fees incurred in the defense of the assured driver. Both companies have similar clauses requiring them to furnish their assured a defense against any suit

within the insurance coverage. But see Dodge v. Firemen's Fund Ins. Co., 362 S.W.2d 767 (Mo.Ct.App.1962). The district court did not reach these issues.

Within the Missouri cases decided, we observe different applications of the rules, recognizing in one instance complete indemnity by one carrier to another and in another case, a pro rata sharing of costs. In Allstate Ins. Co. v. Hartford Accid. & Indemnity Co., 311 S.W.2d 41 (Mo.Ct.App.1958), it was held without discussion that the primary carrier was obligated to indemnify completely the secondary carrier for the expenses the latter incurred in defending the assured.[3] In State Farm Mutual Auto Ins. Co. v. Central S. & I. Corp., 405 S.W.2d 530 (Mo.Ct.App.1966) the court recognizes a pro rata contribution between two carriers based upon the language of the "other insurance" clauses and their respective limits. The case might be distinguished, however, on the ground that the court did not find a true "primary" and "excess" situation was involved. These cases are from the Missouri intermediate courts of appeal and do not discuss the precise issue before us.[4]

Under our reversal as to Millers' coverage, the case must necessarily be remanded to the district court for final determination of the exact amount of any money judgment which might possibly be rendered herein. Under the circumstances, we prefer to allow the parties to brief fully and argue the question of contribution under Missouri law before the court below. This course we deem advisable since the question appears to be unsettled under Missouri law and we prefer that the Missouri Federal District Court have the first opportunity to pass upon the local law involved. It is of course possible that in the interim the Supreme Court of Missouri will have decided the issue as to the law controlling.

Judgment is reversed and remanded with directions consistent herewith.

---

3. Millers claims that this case is authority for the denial of any fees and expenses. However, a close reading discloses this is erroneous. The fees and expenses incurred in the actual defense are incorporated in the judgment allowed, whereas such fees to interplead the losing carrier in a third party suit was disallowed.

4. Compare the rule of "no contribution" in Minnesota, that an insurance carrier should not be able to seek contribution from another co-insurer since both companies have independent obligations to defend the assured, see Iowa Nat'l Mutual Ins. Co. v. Universal Underwriters Ins. Co., 276 Minn. 362, 150 N.W.2d 233 (1967), and the rule in California allowing contribution between "all obligated carriers who have refused to defend * * *" as discussed in Continental Casualty Co. v. Zurich Ins. Co., 57 Cal.2d 27, 17 Cal.Rptr. 12, 18, 366 P. 2d 455, 461 (1961). See our discussion in Universal Underwriters v. Wagner, 367 F.2d 866 at 877, n. 22.