745 P.2d 1165

Phillip CHEE OWENS, and Norma Chee Owens, on their own behalf, and as Next Friends of Merle Chee Owens, their child, Plaintiffs–Appellants,

v.

LEAVITTS FREIGHT SERVICE, INC., an Oregon Corporation, Clyde Runyon, Bill G. Loshbough, Assistant State Superintendent of Transportation and Interagency Coordinator for the Department of Education, the State Transportation Division of the State Board of Education, the McKinley County School District, the State of New Mexico and George Hoover, Defendants–Appellees.

No. 8512.

Court of Appeals of New Mexico.

March 3, 1987.

Louis Marjon, Albuquerque, for plaintiffs-appellants.

Joseph A. Sommer, Sommer & Lawler, P.A., Santa Fe, for defendants-appellees Leavitts and Runyon.

John B. Pound, James C. Murphy, Montgomery & Andrews, P.A., Santa Fe, for defendants-appellees Bill G. Loshbough and The State Transp. Div. of the State Bd. of Educ.

Robert G. McCorkle, John A. Swain, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendants-appellees McKinley County School Dist. and George Hoover.

## OPINION

ALARID, Judge.

Plaintiffs appeal from a district court order granting dual motions for summary judgment in favor of defendants Transportation Division of the State Board of Education and Bill G. Loshbough (State), and the Gallup–McKinley County School District and George Hoover (School District). We affirm as to the State defendants and reverse as to the School District defendants.

■ Preliminarily, we discuss the State's claim that plaintiffs' appeal should fail because their brief neglected to specifically challenge the trial court's findings that allegations against the State were not actionable under the waiver of immunity provisions of the Tort Claims Act, NMSA 1978, Section 41-4-5 (Repl.1986). It is implicit from plaintiffs' brief that they attack the reasoning of the trial court's memorandum opinion and subsequent order granting summary judgment. Similarly, plaintiffs have provided this court with the necessary record for review. *See Maynard v. Western Bank,* 99 N.M. 135, 654 P.2d 1035 (1982) (rules of appellate procedure will be liberally construed so that causes on appeal may be determined on their merits). We are not persuaded, therefore, that plaintiffs' appeal is not properly before this court, and we review the decision of the trial court.

## FACTS

On the morning of September 14, 1982, 12–year-old Merle Chee Owens was struck by a semi-truck as he attempted to cross State Road 32 to board his school bus, parked off the road on the east side of the highway. Merle had been driven to the bus stop by his aunt, Bernice Skeets. Ms. Skeets approached the school bus in her pickup truck from the south, crossed the road parallel to the bus, and parked on the wrong side of Highway 32 (i.e., facing north on the shoulder of the west side of the highway). Merle's grandmother, a passenger in the pickup, got out of the truck in order to let Merle out. Merle suddenly began running across the southbound lane of the highway into the path of an on-coming semi-truck driven by defendant Runyon, an employee of Leavitts Freight Services, Inc.

Defendant Hoover, the driver of the school bus, testified by deposition that as the child jumped from the truck, another school bus, northbound on Highway 32, momentarily blocked his view of the boy. As soon as the bus had cleared, Hoover saw the child dart into the road and into the path of the semi-truck. He stated there was no time for either him or the driver of the semi to attempt to avoid the accident.

## DISCUSSION

It is an often-repeated rule that summary judgment should only be granted where there is no genuine issue as to any material fact and where the moving party is entitled to a judgment as a matter of law. SCRA 1986, R. 1–056(C). Once the movant has demonstrated a prima facie case of the absence of a genuine issue of fact, the burden rests on the opposing party to refute it. *Sweenhart v. Co–Con, Inc.,* 95 N.M. 773, 626 P.2d 310 (Ct.App.1981).

### (a) State Defendants

Plaintiffs' theory against the State defendants is that they were negligent in enforcing the regulations they are mandated to impose under NMSA 1978, Section 22–16–2 (Repl.Pamp.1986), and NMSA

1978, Section 66–7–365. Specifically, plaintiffs attempt to expand the requirements of Section 22–16–2 to permit an action in negligence under Section 41–4–5 whenever the State defendants fail to enforce their own regulations. In order to find that the State has waived its immunity under the Act, we would have to conclude that the issuance and enforcement of the State's regulations relating to school bus transportation constitute the "operation" of a motor vehicle. *See* Section 41–4–5. Moreover, we would have to conclude that if the approved bus route or stop designation were ill-designed, such planning would likewise fall under the meaning of the "operation" of a motor vehicle.

The interpretation of "operation of any motor vehicle" is a matter of first impression in New Mexico. We now discuss it as it relates to the State and School District defendants in the design, planning and enforcement of safety rules for school bus transportation.

When a term is not defined by statute, this court will interpret that term in accordance with its usual and ordinary meaning, unless a different intent is clearly indicated. *Wellborn Paint Mfg. Co. v. New Mexico Employment Security Dept.,* 101 N.M. 534, 685 P.2d 389 (Ct.App.1984). The meaning of a statute is to be ascertained primarily from its terms. *Irvine v. St. Joseph Hosp., Inc.,* 102 N.M. 572, 698 P.2d 442 (Ct.App.1984).

Several out-of-state jurisdictions have defined the "operation of motor vehicles" as a physical operation involving "manipulation of a vehicle's controls to propel the vehicle," *Visintin v. Country Mutual Ins. Co.,* 78 Ill.App.2d 75, 222 N.E.2d 550 (1966); *Metcalf v. Hartford Accident & Indemnity Co.,* 176 Neb. 468, 126 N.W.2d 471 (1964); *Indemnity Ins. Co. of North America v. Metropolitan Casualty Ins. Co. of New York,* 33 N.J. 507, 166 A.2d 355 (1960); *State Farm Mutual Automobile Ins. Co. v. Allstate Ins. Co.,* 154 W.Va. 448, 175 S.E.2d 478 (1970), or "a personal act in working the mechanism" of the car, *Feitelberg v. Matuson,* 124 Misc. 595, 208 N.Y.S. 786 (1925); *Morrow v. Asher,* 55 F.2d 365 (N.D.Tex.1932), or in a car accident case, directing and controlling the car as a driver, *Maryland Casualty Co. v. Marshbank,* 226 F.2d 637 (3rd Cir.1955).

Still more applicable here, some jurisdictions have discussed the operation of school buses. In *McNees v. Scholley,* 46 Mich. App. 702, 208 N.W.2d 643 (1973), a child was hit by a car while standing on the opposite side of the road from the designated bus stop. The bus had not yet arrived. Plaintiffs argued that his injuries were the result of the defendant school district's negligence in the operation of its school buses by designating an unsafe location as a bus stop and having its driver stop there. Plaintiffs claimed that the designation of a bus stop constituted the operation of a motor vehicle under a statute similar to New Mexico's Section 41–4–5. The court rejected this argument, stating that "operation" meant "the vehicle must be in a 'state of being at work' or 'in the active exercise of some specific function' by performing work or producing effects at the time and place the injury is inflicted." *Id.* 208 N.W. 2d at 645. *Accord Cobb v. Fox,* 113 Mich. App. 249, 317 N.W.2d 583 (1982). Although in these cases the buses were not at the scene of the accident, the allegations of designating unsafe bus stops are identical to the allegations raised in our case. The analyses of *McNees* and *Cobb* focus on the fact that the designation of bus stops did not constitute "operating a motor vehicle." The court in *McNees* concluded that planning routes and designating bus stops were an essential exercise of the governmental function of education and that the school district was clothed with sovereign immunity. We note that in New Mexico, the distinction between governmental and proprietary functions has been abolished under NMSA 1978, Section 41–4–2(B) (Repl.1986).

The analyses in *McNees* and *Cobb* can be extended to the facts here and applied to the State and School District defendants. Under Section 66–7–365, the director of transportation (under the state board of education—Section 22–16–2) shall adopt and enforce regulations to govern the design and operation of all school buses when such buses are owned and operated by a

school district or private party. The plain language of this statute states that the director only adopts and enforces regulations; the director does not actually operate the bus.

As the trial court below pointed out in its memorandum opinion:

> Mr. Loshbough * * * submitted an affidavit indicating that the defendants had nothing to do with the "operation" of the school bus which the plaintiff was intending to board. The bus was neither driven by any of the State defendants nor any of the State defendants' employees. The bus in question was owned and operated by the McKinley County School District.

The State defendants should not be held liable under the Tort Claims Act. *See generally Gonzales v. State*, 29 Cal.App.3d 585, 105 Cal.Rptr. 804 (1972) (where state had no authority to employ bus driver or to operate school buses, state had no liability for injury to plaintiff, who was struck by school bus).

■■■ Plaintiffs allege that the State defendants failed in their duty to adopt and enforce procedures for the safe pick up and transportation of school children. The government does not have the duty to do everything that might be done. § 41–4–2. Governmental entities and public employees shall be liable within the limitations of the Tort Claims Act. *Id.* The design, planning and enforcement of safety rules for school bus transportation do not fall within the meaning of "operation" of a motor vehicle. This court will not look beyond the plain meaning of words of an unambiguous statute. The State defendants were properly dismissed from this lawsuit.

### (b) School District Defendants

If application of Section 41–4–5 is correct for the State defendants, it must be correct for the School District defendants, at least as to designing, planning and enforcing school bus transportation procedures. Thus, we affirm the trial court as to all defendants on the design, planning and enforcement issue by interpreting "operation ... of any motor vehicle" in accordance with its plain meaning.

■■■ The fact that the School District may be immune from liability for alleged improper design, planning and enforcement of school bus transportation procedures does not answer the question of whether it is immune if its driver, Hoover, negligently operated the bus. If immunity is waived as to Hoover under Section 41–4–5, the particular entity that supervises the negligent public employee can be named as a defendant. *Abalos v. Bernalillo County District Attorney*, 105 N.M. 554, 734 P.2d 794 (Ct.App.1987). Thus, if Hoover negligently operated the bus, the School District is properly named as a defendant. We have no doubt that Hoover's operation of the bus falls within the plain meaning of "operation of a motor vehicle" under Section 41–4–5. Whether Hoover *negligently* operated the bus should have been decided by the jury.

On the date of the accident, defendant Hoover was operating under the regulations defined in the School Bus Driver's Manual issued by the State Transportation Division of the State Board of Education. The regulations require that School District officials and their bus drivers pick up and deposit children in a manner conducive to the children's safety. *See Archuleta v. Jacobs*, 43 N.M. 425, 94 P.2d 706 (1939).

Among other things, the manual directs the driver in the proper use of the bus' safety equipment, including the flashing lights and stop arm. The manual stresses that "whenever possible, all loading and unloading operations will be done *off* the traveled portion of the roadway." Following that instruction, and his normal procedure, Hoover made his usual stop at Skeets Road, pulling the school bus completely off the traveled portion of State Road 32. He did not engage the bus' flashing lights and stop arm because Figure 6 of the regulations prohibits engaging the flashers and stop arm when the bus is pulled off the traveled portion of the highway. *See* NMSA 1978, § 66–7–348(B).

However, Figure 6 also carries a legend that says, "Students *do not* cross highway." The School Bus Driver's Manual states, in pertinent part, at page 15:

C. *Loading and Unloading on Route:*
* * * * * *

Circumstances sometimes make it impossible for a bus to pull off the roadway. Therefore, under the following conditions, the bus must stop on the roadway, turn on the alternating flasher lights, and use the stop arm * * *.

D. *Single or Two–Lane Roadway:*

1. Any time students must cross the roadway (See Figure 4, page 20).

Figure 4 is a diagram of a bus stopped on the roadway and shows a picture of a house on the side of the roadway opposite the school bus. Defendant Loshbough stated that the purpose of the house in the diagram was to signify that students must cross the roadway. He also stated "[t]hat if the bus stop is established where youngsters are required to cross the roadway, then [the bus driver] would be responsible for staying [on] the traveled portion of the roadway and using the school bus flashers and the stop arm." He indicated that this would be true, even if the driver had room to pull the bus off onto the shoulder.

Defendant Hoover testified that the usual student load at the Skeets Road stop was about 15–20. He also said that some of the children boarding at that stop lived on Skeets Road. Skeets Road runs perpendicular to State Road 32 on the west side. Normally, the children were waiting for him by the time he arrived. The regulation does not focus on whether children would have to cross the roadway on any particular date, but could be interpreted in a more general way to include situations where the driver knew or should have known that students may have to cross the highway coming from their homes to the bus stop.

█ The fact that the driver made a practice of pulling off the road at the Skeets Road stop is immaterial. While he was required to adhere to the established route stop, the practice was required only as closely as safe operation would allow. A school bus driver has a duty to exercise reasonable care *under the circumstances* to insure the safety of the children in his charge. *Archuleta v. Jacobs.*

Whether defendant Hoover knew or should have known that students had to cross the roadway to reach the bus stop was disputed. He testified that he only saw a student waiting on the opposite side of the road from the stop two or three times in four years. Plaintiffs, however, presented the affidavit of Bernice Skeets that indicated approximately 20 children lived across the road from the stop and regularly crossed the roadway, at least in warm weather.

█ The issue of whether defendant Hoover was negligent by pulling off the pavement on the date in question presents an issue of fact. We do not foreclose the possibility of contributory negligence on the part of an adult who delivers a child across the highway from a bus stop, but such situations are for the jury to decide unless there is no evidence upon which reasonable minds could differ. *North v. Public Service Co. of New Mexico*, 97 N.M. 406, 640 P.2d 512 (Ct.App.1982). School District defendants argue that there is no causal connection between plaintiffs' contention of an improper bus route and the accident itself. To the extent that the bus route relates to the design, planning and enforcement of school bus safety rules, defendants are correct. However, because we find that defendant Hoover was "operating" the school bus within the contemplation of Section 41–4–5 at the time of the accident, the question of negligent operation is a matter for the jury to decide. Causal connection in that instance has not been resolved, and summary judgment in favor of defendants School District and Hoover was improper. *See Sweenhart v. Co–Con, Inc.*

We affirm the judgment of the trial court as to the State defendants and reverse the judgments as to defendants School District and Hoover. The case is remanded for reinstatement on the trial docket.

IT IS SO ORDERED.

BIVINS and APODACA, JJ., concur.