**Douglass E. HARBEL and Janet D. Harbel, Appellants (Plaintiffs),**

v.

**Earl WINTERMUTE and Lloyd Hess, Appellees (Defendants).**

No. 93–169.

Supreme Court of Wyoming.

Oct. 21, 1994.

George Santini of Santini Law Offices, Cheyenne, for appellants.

Anthony T. Wendtland of Davis & Cannon, Sheridan, for appellees.

Before GOLDEN, C.J., and THOMAS, CARDINE,* MACY ** and TAYLOR, JJ.

TAYLOR, Justice.

This co-employee tort action presents a narrow question which has been broadly argued to implicate issues of fairness and government accountability. The injured party operated a front-end loader at a road construction site. The injured party maintains the front-end loader was unsafe and his employer did not correct the problems. Furthermore, the injured party contends that a supervisor and a mechanic permitted the front-end loader to be operated despite their knowledge of the unsafe conditions. However, the resolution of this case does not depend upon a finding of culpable negligence. Instead, the resolution is governed by sovereign or governmental immunity. The employer is a governmental entity. The injured party, the supervisor and the mechanic were all employees of the governmental entity acting within the scope of their duties at the time of the injury. As a result, the district court granted summary judgment in favor of the supervisor and the mechanic. The district court determined, under Wyoming's closed-end governmental tort claims act, immunity had not been waived.

We affirm.

## I. ISSUES

Appellant, the injured party, frames two issues:

1. Are the [Appellees] subject to liability under the Wyoming Governmental Claims Act for "negligence in the operation of a motor vehicle" where they directed the use of heavy equipment which was known to be in a dangerous and unsafe condition?

2. In assuming an exception to governmental immunity under the Wyoming Governmental Claims Act exists, does requiring the use of heavy equipment known by the [Appellees] to be in a dangerous and unsafe condition constitute culpable negligence?

Appellees, the supervisor and the mechanic, identify more issues:

I. Does the recent holding in *Copp v. Redmond* render Douglass Harbel's negligence claims moot?

II. Did the District Court properly grant the Defendants summary judgment under the plain language of the Wyoming Governmental Claims Act including W.S. 1–39–105 and W.S. 1–39–120 based on the record in this case?

A. Was Douglass Harbel operating a "motor vehicle" at the time of his injury as that term is set out in W.S. 1–39–105 and as that term is statutorily defined in W.S. 31–1–101(a)(xv) and W.S. 31–1–101(a)(xvii)?

B. Were Earl Wintermute and/or Lloyd Hess "operating" a motor vehicle at the time Douglass Harbel injured himself such that sovereign immunity for them is waived under W.S. 1–39–105?

III. If the culpable negligence issues in this case are considered in this appeal, have the Harbels met their summary judgment burden to establish that a genuine issue of material fact exists to show that Earl Wintermute and/or Lloyd Hess were culpably negligent in a way which caused Douglass Harbel's injury?

## II. FACTS

On July 26, 1988, Douglass E. Harbel (Harbel) was assigned to operate a Model 950 Caterpillar front-end loader (loader) owned by his employer, the Road and Bridge Department of Sheridan County, Wyoming (the department). Harbel used the loader to remove rocks from a steep slope of private land adjoining a road construction project. As Harbel steered the loader into one pile of loose rocks, the bucket hit solid rock underneath. The loader lunged forward tossing Harbel into the windshield and the roof of

---

* Retired July 6, 1994.

** Chief Justice at time of oral argument.

the cab. Harbel suffered neck and back injuries.

At the time Harbel was injured, the safety equipment installed in the loader by the manufacturer had not been properly maintained by the department. The seat belt in the loader was missing the part of the mechanism used to buckle the belt. In addition, the latching mechanism that anchored the seat to the loader's frame was broken allowing the seat to catapult forward on impact. Finally, the back cushion of the loader's seat was torn and missing some of its protective padding.

As the supervisor of operations at the department, Earl Wintermute (Wintermute) was responsible for assigning employees to projects. Wintermute assigned Harbel to operate the loader at the road construction project on the day he was injured. Ordinarily, Wintermute never inspected safety features of the department's equipment. Instead, he relied on reports from employees to alert him of problems with safety features. However, Wintermute knew that the back cushion in the loader was torn and missing some of its protective padding when he assigned Harbel to operate the loader.

Lloyd Hess (Hess) was the department's mechanic. His responsibilities included repairing equipment and ordering necessary parts. Hess had received several reports from the department's employees, including Harbel, about the condition of the loader's back cushion. Hess had ordered a replacement, but at the time Harbel was injured, the new back cushion had not been installed. Because the back cushion problem was considered minor, Hess had not taken the loader out of service.

Harbel received benefits for a permanent partial disability under the Wyoming Worker's Compensation Act. Harbel also filed a claim with Sheridan County under the Wyoming Governmental Claims Act. The Sheridan County Commission denied the claim.

On July 26, 1991, Harbel and Janet Harbel (collectively Harbel) filed this co-employee tort action against Wintermute and Hess. Harbel maintained that Wintermute and Hess acted "knowingly, willfully and inten-

tionally" in failing to make necessary repairs to correct the unsafe conditions of the loader. Harbel sought damages for his injury, emotional distress, loss of income and disability. Janet Harbel sought damages for loss of consortium.

After nearly two years of discovery, Wintermute and Hess filed a motion for summary judgment. Wintermute and Hess asserted that the action was barred by sovereign or governmental immunity under the Wyoming Governmental Claims Act. The district court determined that as employees of a governmental entity, Wintermute and Hess were acting within the scope of their duties at the time Harbel was injured. Furthermore, the district court ruled that immunity had not been waived to permit a tort action under the Wyoming Governmental Claims Act. The district court granted summary judgment in favor of Wintermute and Hess.

## III. DISCUSSION

■■■ Summary judgment is properly granted when there is no genuine issue of material fact and the prevailing party is entitled to judgment as a matter of law. *Prudential Preferred Properties v. J and J Ventures, Inc.*, 859 P.2d 1267, 1271 (Wyo.1993); W.R.C.P. 56(c). Our review of the record is conducted in the light most favorable to the party opposing the motion. *Lynch v. Norton Const., Inc.*, 861 P.2d 1095, 1097 (Wyo.1993). This court accords no deference to the district court's decisions on issues of law. *Coones v. F.D.I.C.*, 848 P.2d 783, 795 (Wyo. 1993) (*quoting Powder River Oil Co. v. Powder River Petroleum Corp.*, 830 P.2d 403, 406–07 (Wyo.1992)). Because we review a grant of summary judgment from the same perspective as the district court using the same factual materials and the same standards, a summary judgment may be affirmed on any legal ground appearing in the record. *Moncrief v. Louisiana Land and Exploration Co.*, 861 P.2d 516, 523 (Wyo.1993) (*quoting Deisch v. Jay*, 790 P.2d 1273, 1278 (Wyo. 1990)).

■■■ This action involves the interrelationship between two laws which either grant or waive forms of immunity. The Wyoming

Worker's Compensation Act, Wyo.Stat. §§ 27–14–101 through 27–14–805 (1991 & Cum.Supp.1994) (hereinafter Worker's Compensation Act), grants statutory immunity to participating employers from common law wrongful death and personal injury torts in return for the employer's participation in a no-fault industrial insurance fund to provide " 'rapid and certain relief for work-related injuries and death * * *.' " *Hamlin v. Transcon Lines*, 697 P.2d 606, 616, *reh'g denied with opinion*, 701 P.2d 1139, 1142 (Wyo.1985) (*quoting Baker v. Wendy's of Montana, Inc.*, 687 P.2d 885, 887–88 (Wyo. 1984)). The exclusive remedy provisions of the Worker's Compensation Act do not provide immunity to a co-employee who commits intentional acts or willful and wanton misconduct. *Mills v. Reynolds*, 837 P.2d 48, 55 (Wyo.1992). *See* Wyo.Stat. § 27–14–104(a) (permitting co-employee tort action when "employees intentionally act to cause physical harm or injury to the injured employee * * *."). Therefore, under the Worker's Compensation Act, Harbel was permitted to sue Wintermute and Hess to recover damages for personal injury suffered in a work-related accident that allegedly resulted from the culpable negligence of his co-employees. *Copp v. Redmond*, 858 P.2d 1125, 1126–27 (Wyo.1993) (holding that for claims accruing between July 1, 1987 and February 18, 1993, proof of culpable negligence was required for co-employee tort action). *See* Wyo.Stat. § 27–12–103(a) (1983) (repealed 1986) (establishing culpable negligence as standard of negligence for co-employee litigation under Worker's Compensation Act). However, even if Harbel could establish culpable negligence, he could only recover if immunity had been waived under provisions of the second law applicable to this case because Wintermute and Hess were employees of a governmental entity.

■ The Wyoming Governmental Claims Act, Wyo.Stat. §§ 1–39–101 through 1–39–120 (1988 & Cum.Supp.1994) (hereinafter Governmental Claims Act), waives sovereign or governmental immunity but only for certain enumerated torts. *Veile v. Board of County Com'rs of Washakie County*, 860 P.2d 1174, 1177 (Wyo.1993). *See Worthington v. State*, 598 P.2d 796, 800 (Wyo.1979) (characterizing the distinction between sovereign and governmental immunity).

> (a) A governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1–39–105 through 1–39–112.

Wyo.Stat. § 1–39–104(a). The Governmental Claims Act is a closed-end tort claims act. *Worden v. Village Homes*, 821 P.2d 1291, 1295 (Wyo.1991).

■ This court has previously addressed the interrelationship between the immunity grant of the Worker's Compensation Act and the waiver of immunity under the Governmental Claims Act. In *Hamlin*, 701 P.2d at 1142, we held that an injured employee of a governmental entity may structure a claim against his or her co-employees. We explained that under the Worker's Compensation Act, the injured employee must be able to establish that the tortious conduct of the co-employees involved the required degree of negligence. *Id. See Barnette v. Doyle*, 622 P.2d 1349, 1362–63 (Wyo.1981) (holding supervisor was culpably negligent for failing to repair defective brakes in truck which injured co-employee). Before the co-employee litigation can proceed, however, there must be a determination that immunity under the Governmental Claims Act has been expressly waived. *Hamlin*, 701 P.2d at 1144.

While the parties broadly argued the fairness of the immunity grants and waivers and the proof of the required degree of negligence in this case, our attention is focused on the waiver of sovereign or governmental immunity under the Governmental Claims Act. As public employees acting within the scope of their duties, Wintermute and Hess contend they have been granted immunity because there is no provision of the Governmental Claims Act which waives immunity for their actions. Harbel responds, to the contrary, that the Governmental Claims Act contains a specific provision waiving immunity even though Wintermute and Hess were acting within the scope of their duties. Both sides point to the same language of the same statute to support their positions.

*A governmental entity is liable for damages resulting from bodily injury,* wrongful death or property damage *caused by the negligence of public employees* while acting within the scope of their duties *in the operation of any motor vehicle,* aircraft or watercraft.

Wyo.Stat. § 1–39–105 (emphasis added).

▬ To determine whether sovereign or governmental immunity bars this action, we must determine the intent of the legislature as found in the Governmental Claims Act. This court's rules of statutory interpretation were summarized in *Parker Land and Cattle Co. v. Wyoming Game and Fish Com'n,* 845 P.2d 1040, 1045 (Wyo.1993):

We make the determination as to meaning, that is, whether the statute's meaning is subject to varying interpretations. If we determine that the meaning is not subject to varying interpretations, that may end the exercise, although we may resort to extrinsic aids of interpretation, such as legislative history if available and rules of construction, to confirm the determination. On the other hand, if we determine that the meaning is subject to varying interpretations, we must resort to available extrinsic aids. If an ambiguous statute has been construed by an agency charged with administering it, we will accord deference to, but are not bound by, that construction. After all, the final construction of an ambiguous statute is a question for the court.

In interpreting the Governmental Claims Act, this court must strictly construe the statutory exceptions to immunity against potential claimants and, conversely, liberally construe the grant of immunity in favor of the governmental entity. *Martinez v. City of Cheyenne,* 791 P.2d 949, 956 (Wyo.1990); Wyo.Stat. § 1–1–101 (1988). *See also* 1 Shepard's Editorial Staff, *Civil Actions Against State and Local Government, Its Divisions, Agencies, and Officers,* § 3.3 at 181 (Jon. L. Craig ed. 2nd ed. 1992).

The Governmental Claims Act includes a statement of purpose which offers substantial insight into legislative intent. Wyo.Stat. § 1–39–102(a) provides:

(a) The Wyoming legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the doctrine of governmental immunity and is cognizant of the Wyoming Supreme Court decision of *Oroz v. Board of County Commissioners,* 575 P.2d 1155 (1978). It is further recognized that the state and its political subdivisions as trustees of public revenues are constituted to serve the inhabitants of the state of Wyoming and furnish certain services not available through private parties and, in the case of the state, state revenues may only be expended upon legislative appropriation. *This act is adopted by the legislature to balance the respective equities between persons injured by governmental actions and the taxpayers of the state of Wyoming whose revenues are utilized by governmental entities on behalf of those taxpayers.* This act is intended to retain any common law defenses which a defendant may have by virtue of decisions from this or other jurisdictions.

(Emphasis added.)

▬ This court's interpretation of the provisions of the Governmental Claims Act has sought to apply the principles of fairness and balance inherent in the legislation. The legislature has expressed its intent to waive immunity when a specific exception is stated, otherwise the claim is barred. *Sawyer v. City of Sheridan,* 793 P.2d 476, 478 (Wyo. 1990). In *Hamlin,* 701 P.2d at 1144, we concluded: "The legislature sought to afford a remedy to persons injured by negligent public employees, while avoiding the repeated litigation of the question of governmental immunity." As the typical example, we pointed to, "the negligent operation of an automobile by a public employee in the scope of his or her duties is tortious conduct excepted from the shield of governmental immunity whether raised by the government or the employee." *Id.* *Hamlin* involved a culpably negligent public employee whose actions resulted in the death of a co-employee riding with him in an automobile. *Hamlin,* 697 P.2d at 608.

In two previous cases, we have addressed the legislative intent of Wyo.Stat. § 1–39–105. In *DeWald v. State,* 719 P.2d 643, 649

(Wyo.1986), we determined the legislature authorized a waiver of immunity when a police officer negligently operated a patrol car. Recently, in *Romero v. Hoppal*, 855 P.2d 366, 370 (Wyo.1993), we held that the legislature authorized a waiver of immunity when a snowplow operator negligently operated a snowplow. *DeWald* and *Romero* involved accidents in which the public employee, acting within the scope of his or her duties while operating a motor vehicle, was alleged to have negligently caused injuries to others.

Unlike, *DeWald* and *Romero*, the injuries to Harbel occurred while he was operating the loader. The duties of Wintermute and Hess involved supervision of work schedules and equipment or maintenance of the loader. All parties agree, therefore, that the dispositive issue is what constitutes the "operation of any motor vehicle * * *." Wyo.Stat. § 1–39–105. Harbel argues for a broad interpretation so that Wintermute and Hess would be considered as taking part in the "operation" of the loader. Wintermute and Hess contend that Harbel's interpretation would erroneously equate supervisory and maintenance obligations with the "operation" of the loader. We must determine what meaning the legislature intended for "operation."

█ The legislature did not define the term "operation" as used in the Governmental Claims Act. When a term is not defined in a statute, this court will furnish an ordinary and obvious meaning. *Sheridan Commercial Park, Inc. v. Briggs*, 848 P.2d 811, 815 (Wyo.1993) (*quoting Parker Land and Cattle Co.*, 845 P.2d at 1042). The Motor Vehicle Safety–Responsibility Act, Wyo.Stat. §§ 31–9–101 through 31–9–414 (1994), provides a definition for an "operator" of a motor vehicle. Wyo.Stat. § 31–9–102(a)(ix) states: " 'Operator' means every person who is in actual physical control of a motor vehicle[.]" This definition is consistent with the ordinary meaning of "operate." In *White v. State*, 41 Wyo. 256, 262, 284 P. 764, 765 (1930), this court considered whether a person could "operate" a liquor still and, at the same time, not be the person who used the still. The defendant had challenged the language of an information because he said the charged crime required his use of the still.

*Id.* We concluded that the ordinary meaning of "operate" includes the idea of personal use because "operate" means " 'to put into, or to continue in, operation or activity.' " *Id.*

Other jurisdictions that have considered the issue agree that "operation" of a motor vehicle consists of the personal acts necessary to actually put the motor vehicle in motion. *Feitelberg v. Matuson*, 124 Misc. 595, 208 N.Y.S. 786, 789 (1925); *City of Pittsburgh v. Jodzis*, 147 Pa.Cmwlth. 234, 607 A.2d 339, 349 (1992). "Operation" of a motor vehicle involves "manipulation of the car's controls in order to propel it as a vehicle." *Visintin v. Country Mut. Ins. Co.*, 78 Ill. App.2d 75, 222 N.E.2d 550, 553 (1966). *Accord Indemnity Ins. Co. of North America v. Metropolitan Cas. Ins. Co. of N.Y.*, 33 N.J. 507, 166 A.2d 355, 358 (1960). "Operation" is the "direction and control of [a vehicle's] mechanism as its driver for the purpose of propelling it as a vehicle." *Maryland Cas. Co. v. Marshbank*, 226 F.2d 637, 639 (3rd Cir.1955). *Accord Metcalf v. Hartford Acc. & Indem. Co.*, 176 Neb. 468, 126 N.W.2d 471, 474 (1964) and *State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.*, 154 W.Va. 448, 175 S.E.2d 478, 480–81 (1970). *See also State v. Dirker*, 610 P.2d 1275, 1280 (Utah 1980) (holding "operate" means "the personal act of working the mechanism of the automobile").

Applying these standards, Harbel was the person in actual physical control of the loader. Harbel was the person directing and controlling the mechanism as a driver for the purpose of propelling it as a motor vehicle when he was injured. But could the "operation" of the loader also be imputed to Wintermute and Hess as a part of their responsibilities as supervisor and mechanic? We hold that the answer is no. There is persuasive authority against imputing "operation" to a supervisor or others not in actual physical control of the motor vehicle.

In *Chee Owens v. Leavitts Freight Service, Inc.*, 106 N.M. 512, 745 P.2d 1165, 1166 (1987), the parents of an injured child brought an action against several governmental officials and a school bus driver to recover for injuries the student suffered crossing a road to meet the bus. The court determined that sovereign immunity had not

been waived under the New Mexico Tort Claims Act for the governmental officials who adopted and enforced regulations governing the design, planning and enforcement of safety rules. *Id.,* 745 P.2d at 1168. The court reasoned that the actions of these governmental officials did not constitute "operation" of a motor vehicle. *Id.* However, the court held the action against the school bus driver was not barred by sovereign immunity since he was operating the bus at the time the student was injured. *Id.* at 1169. *See* Lawrence J. Wolfe, Comment, *Wyoming's Governmental Claims Act: Sovereign Immunity With Exceptions—A Statutory Analysis,* XV Land & Water L.Rev. 619, 623 (1980) (noting that Wyoming's Governmental Claims Act is similar to the New Mexico Tort Claims Act).

In *Force v. Watkins,* 118 Pa.Cmwlth. 87, 544 A.2d 114, 115 (1988), the personal administrator of a motorist killed during a high-speed chase filed a tort claim. The defendants included the chief of police who allegedly failed to adequately instruct and supervise the officers involved in the chase, the officer who observed the minor traffic violation that precipitated the chase, and the officer who was driving the pursuing patrol car. The court held that under Pennsylvania's governmental claims act, sovereign immunity had not been waived to permit an action against the chief of police and the officer that observed the traffic violation. The court concluded that they had no role in the "operation" of the patrol car that was in pursuit. *Id.,* 544 A.2d at 116. *See also Jodzis,* 607 A.2d at 351 (holding police dispatcher and radio operator who gave instructions to patrol car's driver had no role in the "operation" of the vehicle for purposes of the governmental claims act).

Finally, in *Conti v. Rose Hill Poultry Co., Inc.,* 3 Conn.App. 246, 486 A.2d 1145, 1146, *cert. denied,* 195 Conn. 802, 491 A.2d 1103 (1985), an employee, injured while driving his employer's truck, brought a negligence action against two co-employees for assigning him to drive a vehicle with defective brakes. The defendants were the general manager and the mechanic in charge of servicing the company's vehicles. *Id.* Under Connecticut's worker's compensation law, a co-employee action could only be brought if a fellow employee was negligent "in the operation of a motor vehicle * * *." *Id.,* 486 A.2d at 1146 n. 2. The court determined that "operation of a motor vehicle" does not include activities unrelated to driving or moving the vehicle. *Id.* at 1147. The court affirmed a grant of summary judgment in favor of the general manager and the mechanic. *Id.*

Wintermute and Hess were not in actual physical control of the loader at the time Harbel was injured. Wintermute and Hess were not controlling the mechanism of the loader as drivers. Therefore, we hold Harbel was the sole person engaged in the "operation" of the loader under the unambiguous language of Wyo.Stat. § 1–39–105.

The parties have also argued that a loader is not a "motor vehicle." Wyo.Stat. § 1–39–105. The legislature did not define this term in the Governmental Claims Act. *But cf.* Wyo.Stat. § 31–1–101(a)(xv) (1994) (defining "motor vehicle" as "every vehicle which is self-propelled except vehicles moved solely by human power"). For purposes of this opinion, we have assumed, without deciding, that a loader is a "motor vehicle." *See* V. Woerner, Annotation, *What is "Motor Vehicle" Or The Like Within Statute Waiving Governmental Immunity As To Operation of Such Vehicles,* 77 A.L.R.2d 945 (1961).

The legislature has chosen to state a limitation on the waiver of sovereign or governmental immunity under Wyo.Stat. § 1–39–105. The limitation is inherent in the choice of the word "operation." *See Sawyer,* 793 P.2d at 478 (holding passage of city ordinance did not involve negligence in the "operation" of a public utility). The legislature has stated that a governmental entity is liable for damages when bodily injury, wrongful death or property damages are caused by the negligence of a public employee, acting within the scope of his or her duties, in the "operation of any motor vehicle * * *." Wyo.Stat. § 1–39–105. If the legislature had intended to waive immunity for negligent supervision or maintenance of motor vehicles, it would have provided a clear expression of that intent. *See Soles v. State,* 809 P.2d 772, 773–74 (Wyo.1991) (holding building inspec-

tions did not involve negligent "maintenance" of building). Without a clear expression of intent to waive sovereign or governmental immunity, the claim by Harbel against Wintermute and Hess is barred.

## IV. CONCLUSION

The legislative decision to grant or waive sovereign or governmental immunity presents difficult policy choices. Fairness directs that parties injured due to the negligence of a public employee have some opportunity for a remedy. In this case, the legislature provided an exclusive remedy for Harbel under the Worker's Compensation Act. At the same time, the legislature barred Harbel from seeking a recovery against his co-employees under the Governmental Claims Act. If these policy choices disclose inherently unfair and inequitable treatment of injured parties, then the remedy is with the legislature, not the courts.

The decision of the district court is affirmed.

CARDINE, Justice, Retired, dissenting.

I would reverse. The critical question to be resolved is one of legislative intent in enacting W.S. 1–39–105 (1988), which provides in part:

> A governmental entity is liable for damages resulting from bodily injury * * * caused by the negligence of public employees * * * in the operation of any motor vehicle * * *.

Damages "caused by * * * public employees * * * *in the operation* of any motor vehicle" is equated by the court to damages caused *by the operator while operating* a motor vehicle. If the legislature had intended this narrow interpretation, it could have said so. The construction of this statute by the court today will result in governmental immunity for damages caused by defectively repaired state vehicles put in operation on a highway and causing injury to its citizens. Thus, if a state employee is negligent in the repair of brakes on a vehicle so that "in the operation" of the vehicle the brakes fail and a pedestrian, child or another is killed or injured, the State will shirk its responsibility for the re-

sulting loss—because the State has immunity, the majority of this court now holds. This construction of the statute by the court does not do much to recognize "the inherently unfair and inequitable results which occur in the strict application of the doctrine of governmental immunity" in W.S. 1–39–102(a) (1988), nor does it correct that unfairness. By this dissent, I do not mean to suggest that appellant should recover damages—only that appellant has a claim not subject to decision on summary judgment.

I am convinced the legislature intended to compensate citizens injured in accidents involving motor vehicles, if such accidents and injuries are the result of negligence on the part of the state employees. For the reasons stated,

I dissent and would reverse.