607 A.2d 339

**The CITY OF PITTSBURGH, a municipal corporation, Appellant,**

v.

**Henry F. JODZIS, Jr., an individual, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1992.

Decided April 10, 1992.

George R. Spector, for appellant.

Edward B. Friedman, for appellee.

Before CRAIG, President Judge, and DOYLE, COLINS, McGINLEY, SMITH, FRIEDMAN and KELLEY, JJ.

McGINLEY, Judge.

The City of Pittsburgh (City) appeals the orders of the Court of Common Pleas of Allegheny County (trial court) denying its motions for post-trial relief and assessing delay damages. We reverse.

On July 1, 1979, at approximately 4:00 A.M., Henry F. Jodzis, Jr. (Jodzis), ran a stop sign while riding his motorcycle. City police officers in a police van observed the infraction and attempted to stop Jodzis with their siren and beacon lights. Jodzis did not stop and, after a chase, succeeded in evading the police van. When Jodzis turned down a narrow, downhill street he encountered a police car. Jodzis' attempt to escape around the car to his right resulted in a collision. Jodzis' foot and part of his leg were amputated as a result of his injuries.

Jodzis sued the City claiming that the officers recklessly struck him with the police car; that the City negligently failed to set up a proper roadblock; that the police officers failed to follow proper apprehension procedures and failed to operate the police car in accordance with relevant statutes and in disregard for the safety of others. The case was tried before a jury in 1987. After receiving evidence, the trial court instructed the jury that Jodzis was negligent as a matter of law because of his admitted violation of a statute that requires motorists to stop upon the request or signal of a police officer, but the trial court reserved for the jury the determination of whether Jodzis' negligence was a substantial factor in causing his injury. Although requested, the trial court did not instruct the jury on the defense of assumption of the risk. The jury assessed damages of $750,000, apportioning 18% of the causal negligence to

Jodzis and 82% to the City. Accordingly, the trial court reduced the verdict against the City to $615,000 and then molded it to $500,000, the maximum recovery permitted by statute against a political subdivision.[1] The trial court also awarded delay damages of $419,232.87.

*Local Rule 212*

The City contends that the trial court erred in applying Local Rule 212 VI. of the Allegheny County Common Pleas Court (Local Rule), relating to pre-trial procedure in trespass cases, which at the time provided in pertinent part as follows: [2]

C. Defendant, within fifteen (15) days after the time set forth for performance by the plaintiff in VI. A. and VI. B. hereof:

(1) Shall serve upon all other parties a written statement containing;

. . . .

(d) The reports of any expert whose opinion will be offered in evidence at the time of trial. *Such reports shall include the findings and conclusions of the expert.* (Emphasis added.)

Local Rule 212 VI. A.(1)(d) establishes a similar requirement for plaintiffs.

On August 6, 1987, Jodzis deposed Robert J. Coll (Coll), who was Superintendent of Police of the City at the time of the accident and formally listed as a witness for the City. Coll was questioned about his knowledge in 1979 of what constitutes a proper roadblock and the methods of communication of such information to police officers.[3] When coun-

1. *See* Section 8553 of the Judicial Code, 42 Pa.C.S. § 8553.

2. Local Rule 212 was substantially rewritten effective March 18, 1991. The new Local Rule 212 III. A. 3. requires each party to serve a written pre-trial statement containing "a copy of the written report containing the opinions and the basis therefor of any person who may be called as an expert. . . ."

3. The question of whether or not a roadblock existed and how it was configured was disputed by the parties. At trial, Jodzis testified that when he encountered the second police car coming toward him it

sel for Jodzis concluded, counsel for the City asked Coll his opinion on whether the roadblock was properly set up. Counsel stated that the sole purpose for the question was to comply with Local Rule 212, because the City intended to call Coll as an expert and to submit his pre-trial deposition as the expert's report. During the deposition Coll opined that the roadblock was proper, and when counsel for Jodzis attempted to question Coll about the factual basis for his opinion, counsel for the City instructed him not to answer.

At the beginning of the trial Jodzis moved to bar the testimony of Coll. The trial court concluded that his deposition did not comply with Local Rule 212 which requires a statement of the facts accepted as true by the expert on which the opinion is based. The trial court gave the City the opportunity to submit a proper report. A newly submitted report stated that Coll's opinion was based on a review of the pleadings, the police reports, the plaintiff's deposition, photographs of the scene and the knowledge and information Coll possessed as Superintendent of Police. The trial court concluded the report also failed to comply with Local Rule 212, and indicated that Coll would not be permitted to testify beyond the scope of his deposition and the pleadings and photographs unless the City complied with the Local Rule. The City chose not to submit anything further. Called as a witness for Jodzis, Coll read the transcript of his deposition to the jury, except for the portion containing his opinion. The City did not ask Coll any questions or call him as its own witness.

 The City contends that the trial court misapplied Local Rule 212 in refusing to allow Coll to render an expert opinion and deprived the City of its only expert testimony on liability. The City asserts that the purpose of the rule

entered his lane and continued to change lanes in front of him in response to his motions in an apparent attempt to block his path. Notes of Testimony, September 30, 1987 through October 8, 1987, (N.T.) Vol. I, pp. 190–191. Officer Joseph L. Barth (Officer Barth), the driver of the second police car, testified that upon encountering Jodzis on his motorcycle he attempted to blockade the road. N.T., Vol. I, p. 369.

was served and there was no possibility of the plaintiff being surprised at trial by the testimony because the plaintiff participated in the deposition and was aware of its contents. This argument ignores the plaintiff's central objection, which is that the City deliberately failed to describe the assumed facts upon which the opinion was based. As the trial court's opinion recites, the purpose of Local Rule 212 is to facilitate preparation for trial, and to apprise opposing counsel of the expert's rationale in order to assist effective cross-examination and adequate rebuttal, if necessary. *Starr v. Allegheny General Hospital*, 305 Pa.Superior Ct. 215, 451 A.2d 499 (1982). The exclusion of testimony without exception on the basis of this rule has been held to be overzealous where counsel unquestionably is aware of the factual claims that form the basis for the opinion. *See Starr.* Here, the trial court concluded that the situation in the present case was in marked contrast to that in *Starr*, because at the time of trial Jodzis still did not know where Coll assumed the police car was situated for purposes of his opinion, among other things. We find no error in the trial court's conclusion that the City's failure to comply with the requirements of Local Rule 212 justified the exclusion of Coll's opinion.

■ The second Local Rule 212 dispute relates to the trial court's admission of the testimony of Lieutenant Thomas J. Neill (Neill), an officer who arrived on the scene shortly after the accident and who wrote the initial police report. Neill was called by Jodzis as a witness during rebuttal and testified that, in his opinion, a roadblock was not set up. The City asserts that Neill effectively testified as an expert and rendered an opinion on whether a roadblock was set up, although no report by him was filed. The trial court noted that Neill was deposed long before trial, and Jodzis' counsel elicited testimony from him about the observations and conclusions on which his opinion was based. In contrast with Coll's deposition, the trial court found that the City had ample notice of the basis for Neill's opinions and a full opportunity to formulate cross-examina-

tion or rebuttal. Relying once again on the interpretation of the purpose of Local Rule 212 in *Starr*, the trial court concluded that the purpose of the rule was satisfied, and to exclude Neill's testimony would have been an overzealous application of the Local Rule. We agree.

### Exclusion of Evidence of Contraband

■ Jodzis filed a motion in limine requesting the trial court to exclude any evidence relating to the fact that, at the time of the pursuit and the accident, Jodzis was in possession of a handgun stolen from the office of the District Attorney of Westmoreland County, hollow point ammunition, and controlled substances. The trial court granted the motion. The City contends that the trial court's ruling precluded it from presenting evidence to the jury concerning Jodzis' motivation to flee and his judgment regarding the manner in which he drove the motorcycle when he attempted to run the roadblock. The City argues that the evidence was relevant because it relates to the issue of whether Jodzis acted as a reasonable person during the flight, which bears directly on the issue of his negligence. In support, the City cites state and federal precedent regarding the admissibility of evidence that a witness has an interest in the outcome of a case, including evidence of prior misconduct of the witness for the always relevant purpose of showing possible partiality and a motive to testify falsely. *See Commonwealth v. Shands*, 338 Pa.Superior Ct. 296, 487 A.2d 973 (1985) (quoting *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)).

As the trial court explained, relevance, which is the fundamental consideration for admissibility, is shown only where the proffered evidence "tends to make a fact at issue more or less probable." *Martin v. Soblotney*, 502 Pa. 418, 422, 466 A.2d 1022, 1024 (1983). In the present case, Jodzis admitted that he fled from the police initially. He also admitted that as he closed on the second police car he realized it was a police car, that the police wanted him to stop, that he had time to stop, and that he made a decision

to go around the police car instead. N.T., Vol. I, pp. 185, 190–94, 216, 232. In view of Jodzis' admissions, the trial court concluded that Jodzis' intent to flee was no longer at issue.

■ In Pennsylvania a trial court may properly exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury; "prejudice" for the purposes of this rule does not mean detrimental to a party's case, but rather, an undue tendency to suggest a decision on an improper basis. *Daset Mining Corp. v. Industrial Fuels Corp.*, 326 Pa.Superior Ct. 14, 22, 473 A.2d 584, 588 (1984). The trial court has broad discretion regarding the admission of potentially misleading and confusing evidence. *Id.* In the present case, the trial court concluded that the City's attempt to introduce the evidence of contraband was designed to present scandalous information that was otherwise inadmissible, and logically unrelated to any legitimate determination of causation, and which would inflame the social conscience or biases of the jury and suggest a decision on an improper basis. Again, we agree that any probative value of this evidence was slight in comparison with the potential for prejudice; therefore we find the trial court's exclusion to be a proper exercise of discretion. *Compare Morreale v. Prince*, 436 Pa. 51, 258 A.2d 508 (1969), (admission of evidence that a litigant was in a bar before a motor vehicle accident, without proof of intoxication, was so prejudicial as to require a new trial).

*Assumption of Risk*

■ The City contends that the trial court erred by refusing to grant the City's requested point for charge on the issue of assumption of the risk, which stated: "When the plaintiff voluntarily proceeded to encounter a known or obvious danger, he is deemed to have agreed to accept the risk and to undertake to look out for himself." Defendant's Points for Charge and Motion for Directed Verdict at II(14), Reproduced Record at 1067a. The City asserts that, based

on Jodzis' egregious and illegal conduct and his uncontroverted testimony that he could have avoided the collision, the trial court erred by failing to grant the requested charge.

The trial court refused to charge on assumption of risk, holding that the doctrine of assumption of the risk does not apply to Jodzis' conduct because the doctrine has been strictly circumscribed by a plurality of the Supreme Court of Pennsylvania in *Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 437 A.2d 1198 (1981). In *Rutter*, the Supreme Court stated:

> We agree that the difficulties of using the term "assumption of risk" outweigh the benefits. The issues should be limited to negligence and contributory negligence. Those are the problems in the case at bar and in all cases brought on a negligence theory....
>
> For the reasons set out herein, we hold that except where specifically preserved by statute; or in cases of express assumption of risk, or cases brought under [strict liability theory], the doctrine of assumption of risk is abolished.

*Id.*, 496 Pa. at 613, 437 A.2d at 1209. Nine years after the *Rutter* decision the Pennsylvania Superior Court commented on the uncertain state of the law as it regards assumption of the risk in *Ott v. Unclaimed Freight Company*, 395 Pa.Superior Ct. 483, 493, 577 A.2d 894, 898 (1990), stating: "[A] majority of the Supreme Court has yet to directly address the issue of whether the assumption of the risk doctrine remains viable, and panels of this court have continued to apply the doctrine."

In furtherance of the proposition that the doctrine has not been abolished, the City relies on the cases of *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983), *Malinder v. Jenkins Elevator and Machine Co.*, 371 Pa.Superior Ct. 414, 538 A.2d 509 (1988) and *Chiricos v. Forest Lakes Council Boy Scouts of America*, 391 Pa.Superior Ct. 491, 571 A.2d 474 (1990). The Supreme Court in *Carrender* recognized the continued existence and applicability of the defense of assumption of the risk under certain circum-

stances. There, the plaintiff was a business invitee of a medical clinic who had parked her car on an icy section of a partially cleared parking lot and subsequently slipped. The trial court refused to charge on assumption of risk. The Supreme Court noted that a possessor of land is not liable to invitees for physical harm caused by a condition on the land whose danger is known and obvious. *Carrender*, 503 Pa. at 185, 469 A.2d at 123 (quoting Sections 343 and 343A of the Restatement (Second) of Torts (1965)). The *Carrender* court concluded that the plaintiff's testimony established that the danger was known and obvious. The plaintiff contended that the comparative negligence statute [4] reflected a legislative intent to eliminate the defense of assumption of risk by incorporating it into comparative negligence. The *Carrender* court stated:

It is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers. *Thus, to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers....* (Emphasis added.)

*Id.,* 503 Pa. at 187–89, 469 A.2d at 125. The *Carrender* court found that the comparative negligence system envisioned two negligent acts: a breach of duty by the defendant to the plaintiff and failure by the plaintiff to exercise care for himself. *Id. Malinder* and *Chiricos* were, similarly, cases involving a finding that the defendant owed the plaintiff no duty.

As Jodzis emphasizes, the above cases illustrate the "no duty" category of cases under the general rubric of assumption of risk. Our courts consistently have recognized that "no duty" cases are distinct from other categories of assumption of the risk cases. Assumption of risk outside the category of "no duty" cases was discussed by the Superior Court in *Fish v. Gosnell*, 316 Pa.Superior Ct. 565,

4. Section 7102 of the Judicial Code, 42 P.S. § 7102.

463 A.2d 1042 (1983). There the plaintiff did not move out of the way of an oncoming car at night because he assumed it was a friend playing a joke. The trial court refused to instruct the jury on assumption of risk. The Superior Court stated that assumption of risk may be applied under the following standard:

> [A] plaintiff who fully understands a risk of harm to himself ... caused by the defendant's conduct ... and who nevertheless voluntarily chooses to enter or to remain ... within the area of that risk, under circumstances that manifest a willingness to accept it, is not entitled to recover for harm within that risk.

*Fish*, 316 Pa.Superior Ct. at 575, 463 A.2d at 1047 (quoting Section 496C of the Restatement (Second) of Torts (1965)). The Superior Court ultimately concluded that the plaintiff's conduct, although foolhardy and negligent, did not manifest a willingness to accept the risk. *Id.*, 316 Pa.Superior Ct. at 579, 463 A.2d at 1049.

Another assumption of risk case, *Berman v. Radnor Rolls, Inc.*, 374 Pa.Superior Ct. 118, 542 A.2d 525 (1988), involved a claim by an injured novice roller skater that the defective design of the skating rink caused his injuries. In *Berman*, the Superior Court stated that the defense of assumption of the risk requires that the defendant show that the plaintiff was subjectively aware of the facts which created the danger and must appreciate the danger itself, and the nature, character and extent which made it unreasonable. *Id.*, 374 Pa.Superior Ct. at 136, 542 A.2d at 533. A defendant must show more than that the plaintiff did what a reasonable person would know was dangerous, for in that case, the plaintiff would merely be negligent, and his recovery subject to the theory of comparative negligence. *Id.*

Applying these principles to the present case, we conclude, first, that this is not a "no duty" case. The police and Jodzis were not in a situation equivalent to that of a possessor of land and a business invitee. Further, as the trial court and the plaintiff emphasized, the provisions of 75 Pa.C.S. § 3105(e) statutorily reaffirm the duty of police

engaged in a pursuit to operate their vehicles with due regard for the safety of all persons. In addition, the police policies and procedures described by Coll impose a duty on police engaged in a pursuit to protect life and property, including the life of the person pursued. N.T. Vol. I, pp. 281–82. The only exception Coll recognized to the requirement of an adequate avenue of escape in a roadblock situation is where the person fleeing "has demonstrated the willingness and ability to take lives." N.T. Vol. I, p. 292. Therefore, the fact that Jodzis took flight does not eliminate the need to leave an avenue of escape, and the City cannot rely on his "illegal" conduct to form the basis for an assumption of the risk charge.

Although the City cites and quotes from "no duty" cases such as *Carrender* and *Chiricos,* the thrust of its argument is more nearly in line with the standards described in *Berman* and *Fish.* The City argues that Jodzis made a conscious choice to place himself in a position of danger from which he could have extricated himself but deliberately chose not to do so, and asserts that, based on Jodzis' uncontroverted testimony, the jury could have believed that Jodzis was subjectively and objectively aware of the risk of collision when he cut across the path of a police car while fleeing from the police.

The City's argument is contrary to the evidence the City presented in its case. Lieutenant William Robert Bell (Lieutenant Bell),[5] called by the City, testified that a roadblock was set up, that the car was stopped, and that the car did not move from the time it stopped until the impact with the motorcycle. N.T. Vol. III, pp. 901–02. It is certainly inconsistent for the City to now argue that the danger which Jodzis perceived and accepted was the danger involved in cutting in front of a moving car.

Another danger to which the City might be referring would be that involved in attempting to drive a motorcycle through a space not large enough to accommodate it. Jod-

5. Lieutenant (then Officer) Bell was the partner of Officer Barth and a passenger in the police car involved in the roadblock.

zis testified that he attempted to go around the car because he saw sufficient room to go around. N.T. Vol. I, p. 193. As we have noted, Officer Barth testified that it was his intention to block as much of the road as possible and to make it "difficult at best" and "hazardous" for the motorcycle to get by. N.T. Vol. I, pp. 372, 384.[6] He testified also that there was some room between the car and the curb on his left when he stopped, but he did not know how much. N.T. Vol. II, pp. 526–27. Lieutenant Bell testified, on the basis of a photograph of the accident scene taken before the police car or the motorcycle had been moved, that the distance between the left front corner of the car and the curb was approximately six feet. N.T. Vol. III, pp. 905–06. The City did not attempt to elicit testimony from Jodzis about his perception of the adequacy of the space available, therefore the record does not sustain the assertion that Jodzis was aware of the nature and character of the danger of forcing his motorcycle through a space not large enough to accommodate it. If Jodzis perceived that the space was large enough to fit his motorcycle through, he cannot be said to have accepted the risk in the manner delineated in *Fish* and *Berman.*

Jodzis' testimony at trial raises the question of whether the car was moving slowly at the time of the accident. In its brief, the City reproduces certain testimony given by Jodzis during the trial to establish that an assumption of the risk charge should have been given. During the trial, Jodzis testified as follows:

JODZIS:

[I] decided to go through that area [on the driver's side of the police car], which was big enough for my bike to go through and still have room.

6. Counsel for the City objected to questioning of Officer Barth concerning the degree of obstruction that he intended to create, in view of Jodzis' testimony that he thought there was enough room to go around. The trial court overruled the objection, stating that, on this factual issue within the province of the jury, the trial court would accept evidence of the possibly different memories of various witnesses. N.T. Vol. I, pp. 374–76.

As I had did that, the police car, he was going very slow, if moving at all—as I came across and started to turn in front of him, and my front wheel had started to come around his front end and side of the car, he turned to the left and *accelerated a little bit.*

JODZIS' ATTORNEY TO JODZIS:

And what happened?

JODZIS:

It struck me and the bike on my left side.

N.T., Vol. I, at 193 (emphasis added). The trial court's opinion indicates that the police car "slowed short of [Jodzis']

[motor]cycle, *then veered forward ...*" Opinion of the Trial Court, August 8, 1990 at 3 (emphasis added).

The Superior Court has held consistently that it is erroneous for a trial judge to refuse to instruct the jury on the theory of contributory negligence if evidence of contributory negligence can be found in either party's case. *Matteo v. Sharon Hill Lanes, Inc.,* 216 Pa.Superior Ct. 188, 263 A.2d 910 (1970). *See also Nelson v. Barclay Motors, Inc.,* 414 Pa. 633, 202 A.2d 48 (1964), *Brown v. Jones,* 404 Pa. 513, 516, 172 A.2d 831, 833 (1961). However, Jodzis' testimony, while it may indicate negligence, does not indicate that he assumed the risk of being struck by a slowly moving police vehicle which suddenly accelerated as he tried to pass it. There was no reason for the trial court to instruct the jury in accordance with Section 496C of the Restatement.

### Delay Damages

The City also contends that the trial court erred in awarding and computing delay damages pursuant to Pa. R.C.P. No. 238. Under the new version of Rule 238 promulgated by the Supreme Court after its decision in *Craig v. Magee Memorial Rehabilitation Center,* 512 Pa. 60, 515 A.2d 1350 (1986), a defendant is not liable for delay damages for periods after which it had made a written settlement offer, and the ultimate award to the plaintiff was not

more than 125% of that offer, or for periods during which the plaintiff caused the delay. The City never made a written settlement offer in this case.[7] However, the City refers to delays in pursuing discovery by the plaintiff, a motion for a continuance, and failure to place the case at issue. The trial court noted that *Craig* directed a court which rules on a petition for delay damages to consider a variety of factors:

> In making a decision on a plaintiff's entitlement to delay damages the mere length of time between the starting date and the verdict is not to be the sole criterion. The fact finder shall consider the parties' respective responsibilities in requesting continuances, the parties' compliance with rules of discovery; the respective responsibilities for delay necessitated by the the joinder of additional parties; and other pertinent factors.

*Craig*, 512 Pa. at 66, 515 A.2d at 1353 (footnote omitted).

The trial court then described various discovery disputes that it said revealed a "pattern of recalcitrance" on the part of the City. The complaint was filed in May of 1981. In September of 1982, Jodzis filed a "Motion for Sanctions" which sought to compel the City to provide requested documents and to answer certain interrogatories. The trial court granted the requested relief. In July of 1984, after Jodzis had sought to depose four witnesses, he filed another "Motion for Sanctions", which asserted that counsel for the City had repeatedly and disruptively objected during depositions, had refused to instruct witnesses to answer and had instructed witnesses not to answer and otherwise impeded full responses. The court referred the matter to a special master who, after a hearing, issued a report which recommended that the City be required to provide additional testimony in regard to roughly two-thirds of the fifty-eight matters in dispute. The trial court quoted from the master's report as follows:

7. After the jury was selected and the trial was set to commence, the City made an oral settlement offer of $10,000.

The single most significant factor contributing to this breakdown was the unwillingness of the defendant to provide information. This may reflect a grudging approach to discovery generally. Based upon statements made at the hearing, it more likely reflects a particular distaste for this plaintiff and the claim he is asserting. Whether he is ultimately successful or not, however, as long as his action is pending, this plaintiff, like all other litigants, is entitled to make use of discovery in preparing his case.

*Jodzis v. City of Pittsburgh,* No. GD 81–13844, slip op. at 49–50.

The case was called to trial in October of 1986, but neither side had filed a pre-trial statement. Jodzis filed a motion to continue, without opposition from the City, and discovery continued. In July of 1987, Jodzis once again was forced to seek judicial intervention for the purpose of compelling the City to designate a witness to testify on police department policy at the time of the accident.

The court considered Jodzis' prudence in placing the case at issue as well-advised, because of the parties' previous skirmish and the pendency of further discovery, and noted that the City could have placed the case at issue, too. Concerning delays in scheduling depositions following the special master's report, the trial court observed that Jodzis had no reason to expect the City to be cooperative, and that the second round of depositions was necessary only because of the City's lack of cooperation during the first. In regard to the continuance, the trial court observed that both parties were equally surprised at the appearance of the case on the trial list, that the City did not oppose the motion, and that the City amended its new matter some ten months later, the same day on which it filed its pre-trial statement.

■ The Explanatory Comment—1988 to the new Rule 238 expressly notes that the burden is on the defendant who resists a motion for delay damages to prove either that the requisite offer was made or that the plaintiff was responsible for a period during which the trial was delayed. In view

of the history of the case, we conclude that the trial court was correct when it determined that the City did not meet its burden and was liable for delay damages in accordance with the provisions of Rule 238.

### Immunity and Comparative Negligence

 The City argues that this matter is controlled by the decision of a panel of this Court in *Crowell v. City of Philadelphia*, 131 Pa.Commonwealth Ct. 418, 570 A.2d 626, *petition for allowance of appeal granted*, 525 Pa. 550, 551, 582 A.2d 1311 (1990). In *Crowell* this Court concluded that joint tortfeasor liability of a governmental unit had been effectively eliminated by the Supreme Court's decision in *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987) (the negligence of a government instrumentality must actually cause the injury in question, not merely facilitate the injury caused by the actions of another). *See Crowell*, 131 Pa.Commonwealth Ct. at 425–426, 570 A.2d at 630. An en banc panel of this Court recently overruled *Crowell. Buschman v. Druck*, 139 Pa.Commonwealth Ct. 182, 590 A.2d 53 (1991). Although *Buschman* did not overrule *Crowell* on its essential holding that the conduct of the government instrumentality must cause a plaintiff's injuries, and not merely facilitate the injuries, *Crowell* no longer provides a basis for the position that governmental immunity will not lie in a joint tortfeasor situation. The City is not entitled to a judgment n.o.v. on this point.

### Vehicle Exception to Municipal Tort Liability

 Finally, the City asserts that the trial court erred when it permitted testimony relative to standards for the proper use and setting up of roadblocks and testimony concerning radio communications between a dispatcher and officers involved in a pursuit. The City argues that the trial court, by admitting this testimony and in its charge to the jury, introduced theories of negligence outside the statutory exceptions to governmental immunity.

Section 8541 of the Judicial Code, 42 Pa.C.S. § 8541, provides for governmental immunity generally. Section 8542(a) of the Judicial Code, 42 Pa.C.S. § 8542(a), imposes liability where (1) damages would be recoverable under common law or a statute creating a cause of action from a defendant not having an immunity defense and (2) the injury was caused by negligent conduct of a local agency or its employee acting within the scope of his office or duties with respect to one of the eight exceptions. The exceptions are listed in Section 8542(b) of the Judicial Code, 42 Pa.C.S. § 8542(b), and include "(1) *Vehicle liability.*—The operation of any motor vehicle in the possession and control of the local agency."

In *Mascaro* the Pennsylvania Supreme Court held that exceptions to governmental immunity are to be narrowly construed, because of the expressed legislative intent to insulate political subdivisions from tort liability. The Supreme Court has stated that the word "operation" in Section 8542(b)(1) means actually putting the motor vehicle in motion, therefore preparing to operate it or acts taken at the cessation of operation are not the same as actually operating the vehicle. *Love v. City of Philadelphia*, 518 Pa. 370, 375, 543 A.2d 531, 533 (1988). In *Force v. Watkins*, 118 Pa.Commonwealth Ct. 87, 544 A.2d 114 (1988), this Court held that the the motor vehicle exception is not applicable to training or supervision, acts which constitute preparation for the use of the vehicle. However, the fact that a police policy may relate to activity that involves the operation of a motor vehicle does not mean that violation of the policy is negligent supervision and exclusive of negligent operation. In setting up a roadblock, the operator of the vehicle must place the vehicle into position, and in doing so may create an unnecessary hazard. Under the facts of this controversy, the claim that the roadblock was improperly conducted, even if the decision to use it was proper, involves the actual operation of the vehicle.

■■■■ The City first challenges the testimony of the plaintiff's expert witness, Dr. James J. Fyfe, and the por-

tions of the trial court's charge relating to that testimony. Dr. Fyfe, a former police officer, is a professor at the American University School of Justice, a senior fellow of the Police Foundation (a private nonprofit research and training foundation), a consultant to many police organizations in training matters and the author of several books, including a textbook and numerous articles relating to police training in general and police use of force in particular.[8] The trial court permitted Dr. Fyfe to testify about nationwide standards for police pursuits, when the use of a roadblock is proper and the proper method of setting up a roadblock.

Concerning pursuit in general, Dr. Fyfe's testimony is very similar to Coll's, indicating that virtually all police training materials emphasize that the primary responsibility of the police is to protect life, and that this concern outweighs apprehension. N.T. Vol. II, pp. 656–57. *See* N.T. Vol. I, p. 281 (testimony of Coll). Dr. Fyfe testified that the policy of the International Association of Chiefs of Police regarding roadblocks is that they may properly be used only under circumstances that justify the use of deadly force because of the hazard they create; hence roadblocks are not appropriate for stopping traffic violators. N.T. Vol. II, pp. 677, 752. Coll testified that roadblocks were not governed by the same rules applicable to use of deadly

---

8. The City also asserts on appeal that the trial court erred by denying its motion for withdrawal of a juror when Dr. Fyfe, during redirect examination on his qualifications, responded to a question concerning how he decides to become involved in cases by stating that he decided whether the attorney who approached him was on the right side. N.T. Vol. II, p. 639. During sidebar conference on the City's motion, counsel for the City asserted that the only thing that would cure the prejudice would be for the trial court to admonish the jury that the witness' statement was improper. Over objection from the plaintiff the trial court did instruct the jury that the statement was improper, and the trial court further emphasized the jury's role as sole fact finder and the irrelevance of the opinion of anyone else as to which side in the case is right. N.T. Vol. II, p. 645–50. Both counsel declined the trial court's invitation to comment after the curative charge. N.T. Vol. II, p. 650. The trial court addressed this issue at some length in its opinion, and we agree that counsel's acquiescence in the curative charge constituted waiver of the record objection.

force, because the roadblock, if properly set up, should not be a surprise obstruction and should allow ample time to stop. N.T. Vol. I, pp. 285–87. Concerning the standard for setting up a roadblock, Dr. Fyfe testified that a proper roadblock always leaves an avenue of escape, consistent with the obligation of the police to protect life. N.T. Vol. II, p. 679. This coincides with Coll's testimony. N.T. Vol. I, p. 281.

In the present case, Officer Barth testified that he intended to block as much of the roadway as possible and to make it hazardous for the motorcyclist to attempt to go around him. N.T. Vol. I, p. 384, Vol. II, p. 506. Jodzis testified that the police car, driven by Officer Barth, may have been "moving slowly" but accelerated as he tried to pass it on the right side and struck his motorcycle. N.T., Vol. I, p. 193–194. In response to hypothetical questions, Dr. Fyfe rendered his opinion that, if after both vehicles had come nearly to a stop, the police car rammed the motorcycle as it cut in front, such conduct would violate both national police standards and the policies of the Pittsburgh Police as described by Director Coll. Also if the police car set up a roadblock intending to block the entire road and to make it hazardous for the motorcycle to go around, such conduct would violate national and local standards. And if the police officer acted without knowledge of the policy of protecting life and his only intent was to stop the motorcyclist, such conduct would violate national and local standards. Finally, if the police department failed to provide training relating to ramming or the proper use and implementation of roadblocks, this did not conform to national standards. N.T. Vol. II, pp. 685–95.

The City mischaracterizes Dr. Fyfe's testimony by stating that his description of nationwide standards implies that it is reasonable for violators to flee the police and that the police are negligent and should be liable because they dare to pursue. In fact, Dr. Fyfe testified regarding policies which govern pursuit of fleeing traffic violators, noting that such policies are necessary because vehicle pursuits

are among the most tense situations that police face; he did not state that pursuit was per se unreasonable. N.T. Vol. II, pp. 659, 663. In the context of the overriding principle of protecting life, Dr. Fyfe described guidelines which included: not undertaking the pursuit unless a "serious defendant" is involved; advising the dispatcher immediately of the type of vehicle and type of offense and keeping the dispatcher posted as to the progress of the pursuit; not riding on the bumper of the fleeing vehicle because that increases the speed and the danger; cutting the pursuit off when it becomes clear that it is dangerous; and advising the dispatcher if another vehicle joins in the pursuit. N.T. Vol. II, pp. 672–74. None of Dr. Fyfe's testimony contradicts the postulates of Pennsylvania law as set forth in *Bickert v. Borough of Riverside,* 118 Pa.Commonwealth Ct. 91, 545 A.2d 962 (1988) and *Commonwealth v. Hunter,* 240 Pa.Superior Ct. 23, 360 A.2d 702 (1976), relied upon by the City.[9] The standard of care exercised by a police officer when operating a motor vehicle is an appropriate subject for inquiry under the terms of the exception to governmental immunity. *Bickert,* 118 Pa.Commonwealth Ct. at 95, 545 A.2d at 964.[10]

As the trial court instructed the jury at the outset of the case, Section 3105 of the Vehicle Code, 75 Pa.C.S. § 3105, grants privileges to drivers of emergency vehicles (including police cars engaged in actual pursuit of suspected violators) with regard to certain traffic laws, but also provides as follows: "(e) Exercise of care.—This section does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons." N.T. Vol. I, p. 95. The trial court noted that the Superior

9. *Bickert* confirmed that averred acts of negligence which do not concern the operation of the motor vehicle, particularly the decision whether or not to pursue another vehicle, fall outside the exception to governmental immunity. *Hunter* is a criminal case which held that police are justified in attempting to stop a car which has committed a clear traffic violation in their presence.

10. *See also Baker v. Hawks,* 127 Pa.Commonwealth Ct. 92, 560 A.2d 939 (1989) and *Dickens v. Upper Chichester Township,* 123 Pa.Commonwealth Ct. 226, 553 A.2d 510 (1989).

Court has frequently recognized that national standards of custom or practice in a given profession or industry, although not dispositive or required, are persuasive indicia of the requisite standard of care. The Superior Court approved the admission of such evidence relating to police practices in connection with accident scenes in *Kubit v. Russ*, 287 Pa.Superior Ct. 28, 429 A.2d 703 (1981).[11] The admission of evidence of national standards involving police pursuit procedures, the proper use of roadblocks and the proper method of setting up roadblocks was proper.

 However, the City also contends that the trial court erred in its instructions to the jury. Erroneous jury instructions may be the basis for a new trial if it is shown that the instructions were fundamentally in error and might have been responsible for the verdict. *Ott v. Buehler Lumber Company*, 373 Pa.Superior Ct. 515, 541 A.2d 1143 (1988). The City alleges two errors in the instructions given by the trial court. The first concerns the alleged negligence of Lieutenant Bell. Officer Barth testified that the division of labor between them was that the driver (Officer Barth) drove and the passenger (Lieutenant Bell) wrote the reports and manned the radio. N.T. Vol. II, p. 525. The trial court instructed the jury that the City would be liable for negligent actions of Officer Barth or Lieutenant Bell. N.T. Vol. IV, p. 1212. The City asserts that they cannot be liable for the actions of Lieutenant Bell, because operation of the police radio is not operation of the motor vehicle within the meaning of Section 8542(b)(1), 42 Pa.C.S. § 8542(b)(1).

The trial court noted that Coll's testimony, and that of Lieutenant Bell himself, emphasized the role of radio communication as an integral aspect of the control of a police vehicle. Coll testified that the role of a supervisor in the Pittsburgh Police Department is to monitor all of the actions of the officers on his shift, including radio communica-

11. The City's assertion that *Kubit* is inapplicable because it was decided before the enactment of the predecessor to 42 Pa.C.S. § 8542 is incorrect. The trial court relied on *Kubit* to show the admissibility of evidence of customary police practices to establish the applicable standard of care.

tions of officers engaged in a pursuit and, if there was a need, to lend supervision, which frequently included calling off a pursuit. N.T. Vol. I, pp. 339–40. Lieutenant Bell testified that the communication between the chase officers and the dispatcher provided the dispatcher and the supervisor with the opportunity to review what was happening. Lieutenant Bell agreed that the dispatcher and the supervisor "controlled" the cars in that they could direct the officers to stop or proceed. N.T. Vol. III, pp. 960–61.

As noted, under the motor vehicle exception to governmental immunity, liability is restricted to instances where the *operation* of the motor vehicle in the possession and control of the agency causes harm. 42 Pa.C.S. § 8542(b). The term "operation" must be interpreted narrowly, as actually putting the motor vehicle in motion. *Love.* While this Court has previously held that there is some communication inherent in the operation of a vehicle, particularly the exchange of commonly acknowledged signals among drivers, *Vogel v. Langer,* 131 Pa.Commonwealth Ct. 236, 569 A.2d 1047 (1990), the trial court concluded that Lieutenant Bell's description of the police radio system established that the operation of a motor vehicle *as a police car* actually involves three people—the dispatcher who gives instructions to the radio operator/passenger who in turn instructs the driver on matters of direction, speed etc. Although not untenable, such a conclusion does stretch the concept of "operation" beyond precedent. The exchange of information between the dispatcher and the radio operator is, at most, verbal supervision of the operation of the vehicle, but it is not "operation" as contemplated by *Love,* nor is it an essential part of operating the vehicle in traffic, as in *Vogel.* Consequently, we agree with the City that the trial court's instruction to the jury on this point was erroneous insofar as Lieutenant Bell's conduct in not contacting the dispatcher cannot be recognized as a basis for liability.

The City also contends that the trial court erred in instructing the jury that even a properly set up roadblock

can form a basis for a finding of negligence on the part of the City. The trial court instructed the jury as follows:

The City, in this regard, that is, concerning a roadblock, could be negligent if you, the jury, determine that utilization of a roadblock in a situation such as this is an act of negligence. If you find that it's wrongful for a roadblock to have been used in this situation where they're attempting to apprehend a traffic violator, that in and of itself would be negligence as a matter of law even to use a roadblock.

N.T. Vol. IV, p. 1214. We must recognize that decisions rendered subsequent to the able trial court's handling of this issue, particularly *Bickert,* approve a different rationale. There is no exception to governmental immunity for negligent decisions made by the police in determining which apprehension techniques to enact. This instruction and the erroneous instruction concerning Lieutenant Bell are sufficient ground to justify the granting the City's request for a new trial, as they possibly were responsible for the jury's determination that the City was negligent.

We therefore reverse the orders of the trial court and remand for further proceedings consistent with this opinion.

SMITH, J., dissents.

PELLEGRINI, J., did not participate in the decision in this case.

## ORDER

AND NOW, this 10th day of April, 1992, the orders of the Court of Common Pleas of Allegheny County, dated November 3, November 8 and November 13, 1989, at No. GD 81–13844, are reversed and this matter is remanded.

Jurisdiction relinquished.

SMITH, J., dissents.

PELLEGRINI, J., did not participate in the decision in this case.

COLINS, Judge, concurring and dissenting.

I, as does Judge Kelley, agree with the majority that a reversal and remand for a new trial are warranted. I further wish to indicate that I join with Judge Kelley in his concurring and dissenting opinion, insofar as it would require the trial court to instruct the jury on assumption of risk.

However, I wish to further express my belief that the trial court erred in its granting of a Motion in Limine to exclude any evidence relating to the fact, as noted by the majority, that at the time of the pursuit and accident, Jodzis was in possession of a handgun, stolen from the Office of the District Attorney of Westmoreland County, controlled substances and "hollow point" ammunition.

It is true that Jodzis admitted that he fled from the police initially and, at the time of his attempted circumvention of the second police car, that he was fully aware that it was a police vehicle, the purpose of which was to make him stop, and that he intentionally did not stop. However, Jodzis contends that the police car intentionally moved forward and struck him. The police deny this. Therefore, there exists a further motive to testify falsely regarding whether the police car was moving.

Since the testimonies of the witnesses were at odds concerning this portion of the chase, the jury should not be deprived of evidence which would underscore and amplify Jodzis' desire to escape from the police and, therefore, further reflect upon his credibility.

The jury should not be allowed to hear this case in a vacuum, knowing only a portion of the facts surrounding this controversy. Since these additional facts would relate to Jodzis' credibility and also his need or desire to incur incredible risk in his effort to escape apprehension at all cost, the mention of the contraband would not only be relevant, but would also provide the jury an additional tool in assessing the credibility of the parties.

KELLEY, Judge, concurring and dissenting.

I agree with the majority that a reversal and remand for a new trial are required here, and further agree with most of the majority's analysis. I write separately only because I believe that on remand, the City is entitled to its requested instruction on assumption of the risk.

In *Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 437 A.2d 1198 (1981), a plurality of our Supreme Court was prepared to abolish the doctrine of assumption of risk in its entirety, finding it unnecessarily confusing and inconsistent with Pennsylvania's comparative negligence statute, 42 Pa.C.S. § 7102. This view, however, has never garnered a majority of the justices. To the contrary, as the majority recognizes, the appellate courts of this state have continued to apply the doctrine, at least under certain circumstances. (Maj. op. at 243–248 and cases cited therein). I believe that this case is a classic example of such circumstances.

The cases of *Fish* and *Berman* cited by the majority could best be classified as "secondary" assumption of risk cases; *i.e.*, cases in which the plaintiff's conduct was unreasonable in pursuing a course of conduct when he knew or should have known of the danger. In these cases, assumption of risk "overlaps with the defense of contributory negligence." *Jones v. Three Rivers Management Corp.*, 483 Pa. 75, 78, 394 A.2d 546, 552–53 (1978). On the other hand, "primary" assumption of risk occurs where the plaintiff "knew of the risk, appreciated its character, and voluntarily chose to accept it." *Id.* In its primary sense, assumption of risk remains viable as a complete bar to recovery in Pennsylvania. *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983), *Malinder v. Jenkins Elevator & Machine Co.*, 371 Pa.Superior Ct. 414, 538 A.2d 509 (1988), *Smith v. Seven Springs Farm, Inc.*, 716 F.2d 1002 (3d Cir.1983).

Only when a plaintiff was "subjectively aware of the facts which created the danger and ... must have appreciated the danger itself and the nature, character and extent

which made it unreasonable," and nevertheless voluntarily chose to encounter the risk will the plaintiff be held to have assumed the risk in the "primary" sense. *Fish*, 316 Pa.Superior Ct. at 578, 463 A.2d at 1049.

An important factor in determining whether a plaintiff has assumed the risk in a "primary" sense is the timing of his voluntary choice. When the choice is made prior to the occurrence of the physical event immediately preceding the injury, assumption of risk in the primary sense will most likely be found. *Malinder*, 371 Pa.Superior Ct. at 426, 538 A.2d at 515, while acts of the plaintiff more immediately preceding the actual accident are more likely to be analyzed in terms of "secondary" or negligent conduct. *Fish*, 316 Pa.Superior Ct. at 578–79, 463 A.2d at 1049.

It is at this point that I must separate myself from the majority's analysis. While the majority dissects the course of conduct involved, and analyzes the "risk" solely as the risk of being hit by a police car while attempting to escape from the roadblock, I believe that the entire course of events must be viewed. Jodzis made his voluntary choice when he first elected to evade the police, rather than to stop as was his lawful duty. At that point, Jodzis, by voluntarily engaging in a deliberate attempt to avoid apprehension, assumed the risk that his unreasonable, and indeed unlawful conduct might well result in injuries to himself, the pursuing police officers, or the general public. That a high-speed chase might result in a vehicle collision is so painfully obvious that Jodzis must have been aware of it.

Because Jodzis assumed the risks inherent in a high-speed chase when he first chose to evade police rather than stop, I would hold that this case is more correctly classified as a "primary" rather than a "secondary" assumption of risk. I would also conclude that the facts of this case do not automatically mandate judgment against Jodzis. If Jodzis' testimony that the police car intentionally "rammed" him is believed, this intentional act by the police would most certainly be found to be beyond the scope of the risk

assumed by Jodzis. This, however, is an issue of fact which must be decided by a jury.